HEWITT *vs.* WHEELER AND ANOTHER.

Where, on the trial of a *scire-facias*, in a process of foreign attachment, it appeared that the defendants were described in the original declaration, as the acting and contracting committee for building a Congregational meeting-house, and that it was alleged in such *scire-facias*, that when copies of the original writ were left with them in service, they were, as such committee, indebted to the original plaintiff; it was held, that the addition to the names of the defendants, was surplusage, and was not a sufficient reason for setting aside a verdict in such *scire-facias*, against the defendants as individuals.

Where such *scire-facias* alleged that the execution, in the original proceedings, was put into the hands of a proper officer, who, "having served the same, made his return thereof, with his endorsement thereon, that he had made demand of the debtor named in said execution, of the amount mentioned therein;" it was held, that under such allegation, proof of the alleged demand was admissible, and that it was a sufficient averment of service, especially after verdict.

Where on the trial of such *scire-facias* the plaintiff, who claimed an indebtedness of the defendants under a contract signed by them, as aforesaid, obtained a verdict, which was set aside on the ground that such contract showed an indebtedness of said society, and not of the defendants; and on a new trial of the cause, the plaintiff claimed an indebtedness of the defendants, independently of such contract, and for which they were personally liable to him, in support of which claim he introduced, in evidence, certain supposed admissions of the defendants of their liability to the original debtor, but which admissions were not inconsistent with the claim that they were such agents, and which they contended were made in that capacity, and it was not satisfactorily proved that such society was indebted to the original de-

fendant, and thereupon a verdict was again rendered in favor of the plaintiff; it was held, that such verdict ought to be set aside as being against the evidence.

THIS cause, a new trial having been granted therein, (see 22 Conn. R., 557,) came on a second time for trial before the jury, at the term of the superior court for New London county, holden in September, 1853.

The plaintiff's declaration was as follows:

"Whereas Mary Hewitt, of North Stonington, in New London county, brought her action of book debt to the county court, held at New London, within and for the county of New London, on the second Tuesday of June, A. D. 1848, against Joseph Kinney, of said town and county, an absent and absconding debtor, by writ bearing date the 16th day of May, 1848, demanding the sum of three hundred dollars, in which writ the said Joseph Kinney was described as an absent and absconding debtor, and which was duly served on said Kinney, and also a true and attested copy left with Russel Wheeler and Dudley R. Wheeler, both of said North Stonington, with the officer's doings endorsed thereon, more than fourteen days before the sitting of said court, said Russel Wheeler and Dudley R. Wheeler so being described in said writ, as acting and contracting committee for building a Congregational meeting-house, for the Congregational society in the village of Milltown, in North Stonington, allowing debtors, agents, factors and trustees of the said Joseph Kinney, which said writ having been duly served and returned, and by legal removes said action came to the said county court, held at Norwich, within and for the county of New London, on the second Tuesday of November, A. D. 1848, when and where the plaintiff recovered judgment against the said Joseph Kinney, for the sum of two hundred and twenty-five dollars fifty-four cents debt, and the sum of twenty-seven dollars and seventy-one cents, cost of suit, and thereupon took out execution in due form of law, for the

sums aforesaid with seventeen cents more for said execution, which execution was dated the 5th day of January, A. D. 1849, and signed by James Stedman, clerk of said court, and directed to the sheriff of New London county, his deputy, or either of the constables of the town of North Stonington, in said county, to serve and return, which said execution was afterwards, to wit, on the 12th day of February, A. D. 1849, put into the hands of Lynde L. Huntington, who then was, for a long time before had been, and still is, a lawful deputy to the sheriff of said New London county, who, having duly served the same, on the 5th day of March, 1849, made his return thereof with his endorsement thereon, that he had made demand of the said debtor, Joseph Kinney, the said debtor named in said execution, of the amount of the said execution, and of his fees thereon, and that he refused to pay the same, and that he also had made diligent search for goods and estate of the within named and aforesaid defendant, Joseph Kinney, whereof to satisfy the said execution, but could find none, and that on the 13th day of February, A. D. 1849, he made demand of the said Russel Wheeler and Dudley R. Wheeler, the present defendants, as committee for building a Congregational meeting-house for the society aforesaid, in North Stonington, and also as individuals, agents, factors, trustees, attorneys and debtors of the said Joseph Kinney, the debtor in said execution, of goods and effects of the said debtor, Joseph Kinney, in their hands, whereon to levy to satisfy said execution and the fees thereon, and also of the moneys and debt, or debts, due from them to the said Joseph Kinney, but they, and each of them, neglected and refused to expose the goods and effects of said debtor in their hands, and refused to pay the moneys or debts due from them to said debtor, Joseph Kinney, to apply to the payment of said execution, with his the said officer's fees thereon, amounting to the sum of three dollars and ninety-two cents, as by the files and records of said court and said execution, with said endorsement thereon, ready in court to be shown, will more

fully and at large appear.   Now the plaintiff says that the
said Russel Wheeler and Dudley R. Wheeler, as committee,
as aforesaid, at the time the copy of said writ against said
Joseph Kinney was left with them in service, were indebted
to the said Joseph Kinney, in a greater sum than the amount
of said judgment and execution and said officer's fees
thereon; yet the said defendants would not expose nor dis-
cover any estate of the said Joseph Kinney, whereon said
execution might be levied, nor pay the same, nor any part
thereof, whereby the defendants have become liable in law to
pay the same out of their own estate, as their own proper
debt, and the plaintiff says that said judgment has never
been reversed, nor has the same, nor have the officer's fees,
ever been paid, but are now due.

"These are, therefore, by authority of the state of Con-
necticut, to require you' to make the said Russel Wheeler
and Dudley R. Wheeler, to know, that they appear before
the county court next to be held at New London, within and
for the county of New London, on the second Tuesday of
June, A. D. 1849, then and there to show reason if any they
have, why judgment should not be had and rendered in
favor of the plaintiff, against the said Russel Wheeler and
Dudley R. Wheeler, for the amount of said judgment, exe-
cution and officer's fees, and the costs of this suit, as their
own proper debt to be paid out of their estate, and execution
issued against them accordingly," &c.

The other material facts sufficiently appear from the
report of the former trial of the case, above referred to.

On the present trial, the plaintiff read in evidence the pro-
ceedings in the original suit, in her favor, against Kinney,
the defendant therein.

To prove that the defendants were indebted to said Kin-
ney, at the time when the copy in said original suit was left
in service, they introduced the following evidence.

1. Oliver Hewitt testified as follows: "In May, 1848, at the
instance of the plaintiff's son, I enquired of Russel Wheeler,

one of the defendants, whether he and Dudley R. Wheeler, the other defendant, had ever paid over the money to Kinney. He replied that they had not, and should not pay him, until he gave security to finish the house, or assigned over the policy of insurance. He did not say how much they had, but said they had never paid him anything. This conversation I communicated to the plaintiff's son, and her suit was commenced. The defendants had always told me that they had refused to pay over the money, until Kinney had given security.

"Afterwards, when the cause was on trial in the county court, said Russel, when asked by the plaintiff's counsel, whether they, the defendants, had funds in their hands, said they had, and always intended to keep them, until security was given.

"In January, 1852, when the plaintiff was about to take the deposition of Gideon P. Grant, the said Russel was present, and requested that the taking of the deposition might be postponed, that the defendants might have an opportunity to procure the assistance of counsel; that while there, Denison Hewitt, in the presence of several persons, asked the said Russel, if he paid the plaintiff's debt, if it would come out of his hands, and he replied, 'No.' Denison then said, 'You have the money, and it is immaterial to whom you pay it,' and the said Russel replied, 'Yes.'

"Afterwards, said Dudley, in a conversation with me at his store, said, that after the suit against Kinney was commenced, he went to the plaintiff to pay her the debt, and spoke to her about it. She said the suit could be settled if he would pay her the amount due to her. He replied that he knew that before. And he further stated that he did not settle with her, because she would not make the deduction that others did, who copied at the same time. This was previous to the former trial in the superior court.

"Prior to the commencement of the original suit, the defendants always said to me that they were owing Kinney,

and should not pay him, until he gave security, or assigned the policy, and requested me to sign the contract with them." Upon his cross examination he said, " This was stated at different times. That before the commencement of the original suit, perhaps in the month of April or May, said Russel wished me to come down, as he wanted to pay some money to Kinney, $1,500; they said they had the money. They had the funds paid into their hands by subscribers, for sums subscribed to be paid by the building committee. He wanted to pay over $1,500, and save the interest upon it. They told me they had funds to pay over to Kinney, and, at one time, the said Russel said he told Kinney that he wanted to pay him $1,500, but would not do it, unless they could do it safely. He said he had not paid, but was under an obligation to pay." Upon being shewn the contract with Kinney, and asked if that was not the contract, he replied that he believed that to be the contract which the said Russel showed him; it was like it. He knew of no other contract.

2. The deposition of Gideon P. Grant, who deposed as follows:

" In May, 1848, I went to see Russel Wheeler, at his house. I told him I had been to see Kinney about getting my pay. Wheeler told me to go back and get an order on the committee; he would accept one; the committee would. I told him that was of no use; I had been to see Kinney; he would not give any order. Wheeler then advised me to sue and take the same course the rest had taken. I told him who had sued, and how many; he told me there was money enough in their hands to make me whole. I said at the time of giving my former deposition there were some two thousand dollars in their hands, but I will not now state positively."

Questions by defendants' counsel.

Question. " Did you get your pay ? "

Answer. " I got the most of it; I did not get all of it; I got the pay of Dudley R. Wheeler.

Question. " At what time did Dudley R. Wheeler pay your claim against Major Kinney ? "

Answer. " I cannot state the time."

Question. " What deduction did you make him on your claim against Kinney ? "

Answer. " I took off ten dollars from the debt and I paid the cost."

Question. " In conversation with Dudley R. Wheeler, did he not say you had no claim against the committee, by virtue of your copying suit ? "

Answer. " I can't remember that he did."

Question. " Did you not feel under obligation to said Wheeler for his efforts to have your debt settled, and have you not so expressed yourself ? "

Answer. " I think I have; I thought he acted very friendly towards me."

Question. " Was you not apprehensive that you might lose your debt against Major Kinney, at the time you saw him at the meeting-house, and in your conversation with Russel Wheeler, was you not so agitated, that you might not rightly have understood what he did say ? "

Answer. " I think I was not; I felt a little uneasy about whether I should get my pay."

Question. " Who informed you that sundry persons had copied the committee whom Major Kinney owed ? "

Answer. " Sanford P. Brown first informed me."

Question. " What reason did Kinney give why he would not give an order on the committee ? "

Answer. " No reason, only he would not; said he had turned off hundreds."

Question. " Did he not say that the committee had refused to accept his order; that he had no right to draw; nothing was due to him ? "

Answer. " I don't remember that he did."

Question. "Did you not know he had tried to get money of the committee, and had failed to get it?"

Answer. "I think that I did."

Question. "Are you sure that Russel Wheeler told you that he or the committee were owing Kinney two thousand dollars, or any sum, or did he say they should be owing when the job was finished?"

Answer. "I said, that he said there was some sum owing; I cannot say how much; enough to make me good. I don't recollect whether he said they would be owing Kinney or not, when the job was finished; it is some time since; I can't remember."

Question. "Did you ever see, read or hear read, the contract between Major Kinney and the committee?"

Answer. "I never did."

Question. "Can you tell what sum Kinney was to have for building the meeting-house, or doing the job?"

Answer. "I am not certain how much."

Question. "Can you tell what Major Kinney was to furnish, or what to do in relation to that job, or any of its provisions?"

Answer. "I cannot."

Question. "When you saw Kinney at the meeting-house, when you tried to get an order, did you see what state or condition the house was in; did you examine particularly?"

Answer. "I did not."

Question. "Can you give any estimate how much labor it would take to finish and fulfill his contract, materials, &c."

Answer. "I should not think it would cost over one hundred dollars—it might cost that—it might cost more. I did not take particular notice."

Question. "What was the amount of the debt Major Wheeler settled with you for Kinney?"

Answer. "It was about three hundred dollars, not much over that, nor a great deal less."

Question. "Do you know whether Major Kinney was

bound to furnish stone steps and pillars to that meeting-house?"

Answer. "I have said I did not know anything about the specifications."

Question. "Can you tell whether there were stone-steps placed, and pillars or green blinds on that meeting-house, when you went to get that order?"

Answer. "I cannot."

Question. "Do you know whether his contract was ever fulfilled in building that meeting-house?"

Answer. "I do not know. I have heard it was not."

Question. "Did you sue the same day you went to get an order?"

Answer. "I did not."

3. The plaintiff then read in evidence, the deposition of William S. Hewitt, a son of the plaintiff, who testified as follows:

"On the evening of January 17th, 1852, I read a notice to Major Russel Wheeler, to be present at the taking of depositions, to be used in the case between Mary Hewitt and the Messrs. Wheeler. After I read it he remarked, that the case ought to be settled, he wished it was settled; he said it was a very disagreeable thing—all were neighbors here—an unpleasant affair. Major Russel Wheeler further said, 'Why can't it be settled? Why can't it be left out to some man or men? If you, (meaning Wm. S. Hewitt,) will settle with Joseph Kinney, we will settle this in five minutes.'

"Some time afterwards, Major Russel Wheeler, in the presence of Oliver Hewitt, stated again, if Wm. S. Hewitt would settle with the said Kinney, he would settle the other in five minutes; and that he was ready to pay the money to somebody.

"That the said Russel Wheeler at this time said, that he told Major Dudley R. Wheeler that they had better settle it, and make a finish of it, but that a person before two witnesses forbid their paying it, and that if they paid it to her, they would have to pay it over again to him."

Hewitt *v.* Wheeler and another.

Question by defendants' counsel. " Did not Major Russel Wheeler at the last conversation alluded to above, say that they had nothing in their hands to pay with, or words to that effect ?"

Answer. " Do not recollect such statement."

4. Denison Hewitt testified as follows :

" Soon after the trial of this case, in the county court, I was at the store of the said Dudley, when he commenced a conversation about the suit, and said he wished it settled. I asked him why he did not pay her, as well as the others, who copied at the same time, and soon after ? He said, the others threw off their cost, and mentioned Grant, who threw off $10. But he added that the case would assume a different aspect at the next trial.

" I was present at the time of taking Grant's deposition; the said Russel, at Widow Hewitt's store, said he wished the case could be settled; it was an unpleasant thing. My brother, Oliver Hewitt, said, ' Why did you not pay the debt, when judgment was rendered against you in the county court ?' He replied, that he said to Major Dudley, ' Now let us go and settle it, and make a finish of it.' ' But, said he, ' understand me, Oliver; a man, before two good substantial witnesses, forbade our paying it,' and repeated it three times, and at last, mentioned Kinney's name. William S. Hewitt came in, and he said to him, ' William, why can't it be settled ? If you will settle your account with Kinney, I will settle it in five minutes.' I asked him if he settled it, whether it would come out of his pocket ? He said, ' No, I do not know that it would.' Edwin Hewitt said, ' Well, then, you stand ready to pay it to some one,' and the said Russel said he did."

5. Charles E. Hewitt, a son of the plaintiff, testified :

" I was present at the conversation, at the time of taking Grant's deposition. Russel Wheeler said, it was rather a disagreeable case, and wished it could be settled. Oliver Hewitt asked him why, when judgment was rendered

against him in the county court, he did not come and settle with my mother? He said he then told Major Dudley, now let us go up and settle it, and make a finish of it. But, a man came up, and in the presence of two substantial witnesses forbade their paying it, and named Kinney as the man.

"Denison Hewitt asked him whether, if they paid the claim, they would have to lose it, or pay it out of their own pockets? He said no, he did not know that they should. I then said to him, ' Then you admit that you have the money in your hands, and are ready to pay it to some one?' He said, ' Yes.' "

6. Isaac W. Miner testified: "I was one of the jurors, that tried this case in the county court, and when Russel Wheeler was on the stand, according to my best recollections, a question was put to him by the plaintiff's counsel, whether, if they had paid the claim of Mrs. Hewitt, they would have lost anything. To which the said Russel replied he did not believe they should, for they had money in their hands."

The plaintiff here rested her cause, and the defendants' counsel moved for a non-suit, upon the ground, as they claimed, that the plaintiff had failed to make out a *prima facie* case of indebtedness on the part of the defendants, in the manner alleged. But the motion was overruled.

The defendants then introduced their evidence.

1. Dudley R. Wheeler testified as follows:

"We made the contract produced on the trial, and made no other contract; and had no dealings with Kinney, except what grew out of that contract. In all my acts, I supposed I was acting for the society; I acted as the treasurer of the building committee, and was requested by them to receive the money. I had received, up to May 16th, 1848, but $1,724.44, and had paid out, and become obligated to pay, $1,867.67. The house was in an unfin-

ished state, and hardly any part finished off according to contract, so as to entitle Kinney to any payment." The witness then proceeded to enumerate the several sums which he had received, the sums which he had paid out, and assumed to pay, and the particulars in which the house was not built according to the contract. He then proceeded: " I supposed I was not indebted to Kinney. The plaintiff copied us first, and Grant the next day. Kinney settled with the attaching creditors, and we paid them as fast as he did the work. We had to pay bills to prevent the materials from being attached. There were no funds in our hands for which Kinney could sue; no agreement to pay him anything except what arose under that contract, and no obligation to pay."

2. Russel Wheeler testified: " I was one of the building committee, made no other contract with Kinney than the one produced, and was not indebted to him except upon that. It was understood that Dudley R. Wheeler should receive all the moneys and pay them out. I have received no money except in one instance, ten dollars, and paid it over the next day. Kinney owed Grant some $200 or $300. Grant came to my house. I told him if Kinney fulfilled his contract, we should owe him from $1,000 to $2,000. That was the substance of what I said. I did not say I had funds, or would accept an order; and had refused to accept drafts that night.

" I recollect going to the meeting-house with Oliver Hewitt; was desirous of getting the policy of insurance which Kinney had obtained; offered by way of inducement to advance him some $1,000; did it to induce him to assign the policy; never stated, that I had funds of his; have at all times been in advance to him; should not have stood about the amount to be advanced to him, had he given us security, which he refused to do. He never completed the house, to the acceptance of the building committee. The society took it off his hands, before it was completed, and it

was dedicated, June 27th, 1848. The house was taken as it then was."

3. The deposition of Sanford P. Brown, as follows.

"I worked on, the meeting-house in North Stonington then being built by Joseph Kinney. I began to work May 15th, 1848, preparing for laying the steps, there being then none laid. May 16th, moved dirt sufficient to lay the foundation for steps and drew stones for that purpose. May 18th, placed the first step; May 19th, at work on the same; then discontinued work until May 29th, except half a day May 27th. I worked on the area wall, also worked May 29th and 31st, and three-quarters of a day June 1st, and did no more work for pay, the steps being not finished. The flagging on which the pillars were to stand, was not placed, and the buttresses at the end of the steps were not up, and not completed. The four Ionic pillars for the front of the house were lying on the ground beside the wall. When I began work, nothing was done to the area wall; when I quit, it was about one-third finished. George W. Bentley worked on the steps when I did. When I left work there was no iron railing to the front steps. I afterwards worked inside the house, puttying nail holes, &c., for which I made no charge; the work had been primed but not grained. Can't say the exact date, made no entry, worked part of two days, from the 19th of May, to the 29th. We were waiting for steps, which had to be brought from Hopkinton."

4. The deposition of Gideon P. Grant, which was as follows:

"I was at work for Joseph Kinney, when Russel Wheeler and Dudley R. Wheeler contracted with him to build the meeting-house in Milltown, and said Kinney became indebted to me for work. I left him a short time before said house was finished, and went to work for another man, and I was informed that persons he was indebted to had sued him and copied the committee. I went to see Kinney where he

was at work at the meeting-house, and told him I felt uneasy about my pay, and asked him for security; he wished to know what security I wanted; I told him I would accept of an order from him on the committee; he refused giving any order; he said he would give no man an order. Then I went to Russel Wheeler's house, and told him that I had been to see Kinney, about getting my pay, and he told me that he would not give any order to any one. I told Russel Wheeler that I was anxious to have my pay, and I told him who had copied, told him the number, and he told me, that they were owing Kinney, over two thousand dollars, (it was twenty-two or twenty-three hundred dollars, I think,) and if he would not give an order on the committee, that I should sue him and copy the committee; that they had money enough in their hands that belonged to him, to make me whole, and I ought to have my pay. "

Question by plaintiff. " Was the time you had the conversation with Russel Wheeler, the day after Mrs. Hewitt copied the two Messrs. Wheeler ? "

Answer. " Yes."

Question by the same. " In speaking of the committee that were copied, who do you mean ? "

Answer. " Russel and Dudley R. Wheeler."

Question by the same. " What time did you leave off work for Major Kinney."

Answer. " The last of March."

Question by the same. " Was the meeting-house at that time nearly completed ? "

Answer. " It was very nearly."

Question by the same. " At the time when you saw the meeting-house, when you called to see Kinney to get the order on the Messrs. Wheeler, from the knowledge you had of the forwardness of the house when you left work on it for Major Kinney, and what you saw on the day aforesaid, what amount do you think it would cost, to complete Kinney's contract with the Messrs. Wheeler on said house ? "

Answer. " I should think, as near as I could come at it, between seventy-five and one hundred dollars: it might be more, or it might be less."

Question by the same. " Did you, the same day you saw Kinney and Russel Wheeler, spoken of above, sue Kinney, and copy the Messrs. Wheeler?"

Answer. " I did."

Question by the same. " Who paid your demands on Major Kinney, that you sued and copied the two Messrs. Wheelers for?"

Answer. " Dudley R. Wheeler."

5. The votes of the Congregational society, which were introduced upon the former trial of the cause, appointing the defendants their committee, and authorizing them to build and finish said meeting-house.

The foregoing was substantially all the evidence in the case relative to the indebtedness of the defendants to the said Kinney, and there was no evidence of any indebtedness from the defendants to Kinney, except such as grew out of their dealings, in relation to the building of said meeting-house.

Upon this evidence, the defendants requested the court to charge the jury, that if their declarations and acts, as testified to by the plaintiff's witnesses, were made, and done, in their character and capacity of a committee, for building a meeting-house for the society, and under and by virtue of the aforesaid contract, they were not liable to the plaintiff.

The plaintiff's counsel, in their argument to the jury, admitted that the contract, produced in evidence by the defendants, was not binding upon them personally, but was a contract between the society and Kinney, and that it had so been decided by this court; that if the jury should find no other indebtedness to Kinney on the part of the defendants, than such as arose under, and by virtue of that contract, the plaintiff could not recover. But they claimed to have proved, by their evidence, an indebtedness of the defendants to Kinney, outside of, and independent of such contract, for which

they were liable personally to Kinney, and upon which ground alone, they claimed that the plaintiff was entitled to a verdict.

The court instructed the jury, in conformity with the admissions made by the plaintiff's counsel, informing them, that if they should find no other indebtedness of the defendants, than such as arose under and by virtue of said contract, the defendants were not liable in the present action. That, although said contract did not bind them personally, but only the society, whose agents they were, yet it did not preclude them, in the course of subsequent dealings with Kinney, from becoming personally indebted to him, as claimed by the plaintiff, and that if they had in fact become so indebted, and in a manner rendering them personally liable to Kinney, such indebtedness could lawfully be attached by the plaintiff, and would entitle her to a verdict. And whether there was any indebtedness on the part of the defendants, when the copy was left with them in service, and if so whether it arose under said contract, or in some other manner, were questions of fact for them to determine from the evidence before them.

The jury, having rendered a verdict in favor of the plaintiff, the defendants moved for a new trial.

They also moved, in arrest of judgment, 1. Because the declaration did not aver that the defendants were, in any other way, or capacity, described in the original writ, than as acting and contracting committee for building a Congregational meeting-house, nor that any copy of the writ and declaration was left with them in service, in any other way or capacity, or that they were indebted to said Kinney, in any other way or capacity, than as said committee. 2. Because, it did not aver that the officer, into whose hands the execution, in favor of the plaintiff in the original suit, was put, ever served the same, or made demand of the defendants, of the debt, or debts, due from them to said Kinney, or of the goods, or effects, of said Kinney, in their hands; but

merely averred that said officer, who served said execution, made his return thereof, with his endorsement thereon, that he made such demand, and that they refused to expose said goods, or pay said debt.

The questions arising on both these motions were reserved for the advice of this court.

*Pomeroy* and *Mc Curdy*, in support of the motion, contended, that the declaration was insufficient,

1. Because it showed that the defendants were the acting and contracting committee of the society, and averred that they became indebted as such committee. Being, therefore, agents, with a responsible principal, they were not personally liable. The argument, that because they were not liable as a committee, therefore they must be as individuals, is absurd. The averment is a material one, and cannot be regarded as surplusage. Chitt. Pl., 174. The term, "as committee," has already been decided not to be descriptive of the persons, but of their character.

2. Because it contains no averment that the officer made demand, &c., but only a recital of the evidence. 1 Sw. Dig., 614. 5 Conn. R., 594.

3. That the verdict was against the evidence. There was no transaction between the parties, except such as grew out of their dealings, in relation to the building of the meeting-house. The defendants made a contract on this subject, covering the whole ground, as a committee, and there is no evidence that they made another contract with the same man, of precisely the same kind, on the same subject, as individuals.

*Foster* and *Wait*, contra, contended,

1. That the addition to the names of the defendants, in the original writ, in the suit of Hewitt against Kinney, and in the *scire facias* against the defendants, is merely *descriptio personarum*, and may be rejected as surplusage. *Magill* v.

*Hinsdale,* 6 Conn. R., 464.  *Simonds* v. *Heard,* 23 Pick., 125.
*Windsor et al.* v. *Griggs,* 5 Cush., 210.  The suit was there-
fore brought against them as individuals.

2. That the declaration sets forth distinctly, that the officer,
into whose hands the execution, in favor of Mary Hewitt
against Kinney, was placed, made demand of the defendants
as by statute required, and that they refused to pay the same,
and to expose property for the officer to levy on.  The form
is the same that has been in use, in our state, for the last
twenty-five years, and has been repeatedly approved, and
sustained by our judges, on the circuit, when this question,
now made, has been raised.

3. That the jury, in the present case, having been called
on to pass upon a naked question of fact, and the evidence
being contradictory, and its effect depending, to some extent,
on the credibility of witnesses, a new trial ought not to be
granted.  To justify a court in setting aside a verdict, it
must be so palpably against the evidence, as to show con-
clusively that the minds of the jury were not open to reason,
and conviction, or that an improper influence was brought
to bear on their deliberations.  Our reports abound in cases,
which establish this principle.

The object in granting new trials, being to submit the
facts to another jury, that they may be investigated and con-
sidered with greater deliberation and attention; then, in a
case like this, where there have been two trials, and two
verdicts, the court will not set aside the second verdict,
unless the verdict is such as to shock the sense of justice
and right.  *Duggan* v. *Cole,* 2 Texas, 381.  *Perry* v. *Robin-
son,* 2 Texas, 490.  *State Bank* v. *Wooddy,* 5 Eng., 638.

ELLSWORTH, J.  We think the motion in arrest cannot
prevail.  The objection that the defendants cannot be made
personally liable, because, as it is said, they were copied as a
committee, is without foundation.  They were copied as the
debtors of Joseph Kinney, if at all, and could not be copied

otherwise; being named as a committee, is mere surplusage. We say, if they were not personally liable as debtors, they are not liable at all, and then they could not be copied as a committee, in any intelligent or legal sense of that process. The plaintiff, throughout the proceedings, has put her case upon the personal liability of the defendants, and for that very reason the defendants resist the claim. *Magill* v. *Hinsdale*, 6 Conn. R., 464. *Simonds* v. *Heard*, 23 Pick., 464. *Windsor* v. *Griggs*, 5 Cush., 210.

Nor is there more weight in the objection, that the declaration does not contain an allegation that the officer made demand of the debtor on the execution. The declaration contains averments, broad enough to let in such evidence, and we cannot admit that the court would have permitted a verdict for the plaintiff, if the fact of demand had not been duly proved. Besides, the allegation, that the sheriff " duly served the execution on the 5th of March, 1849, and that he made return thereof, with his endorsement, that he had made demand of said debtor," is sufficient after verdict. The return on the execution was, of course, before the jury, and proved the demand.

The motion for a new trial for verdict against evidence, we think must be maintained.

On the former trial of this case, we held that the written contract, on which the plaintiff then relied for her claim, proved only an indebtedness of the Congregational society, and not of the defendants. We will not repeat the reasons there given. It is now conceded, that the plaintiff cannot recover under the written contract, nor by reason of any indebtedness, growing out of it; but she claims to have proved a personal indebtedness of the defendants, outside of the contract, so that while the written contract shows that the society are the principals, and the committee are agents, in some way the agents have become principals, and the real principals have passed out of sight. This extraordinary transformation she endeavors to make out, chiefly, if not

entirely, from the declarations of the defendants, said to have been made on different occasions and to different persons. We look with hesitation upon any such construction of the supposed admissions, for it is a construction alike unnatural, and without probable cause. Upon the plaintiff's own showing, however, we see no admissions, inconsistent with the original and continued relation of principal and agent, as claimed by the defendants. They were always a committee, and, we think, should be taken to have always spoken in that capacity. What they said, what they did, what they admitted, and what they were ready to do, and wished to have done, are entirely consistent with this view of the matter, and inconsistent with any other; it would be unjust to consider the defendants as meaning to express themselves otherwise. We have carefully looked over the testimony of all the plaintiff's witnesses, and have likewise compared it with the defendants' testimony, and every reëxamination convinces us, that, under the charge of the court, the verdict is manifestly against evidence. The testimony of the plaintiff by itself, when considered alone, is exceedingly feeble and unsatisfactory, but when the testimony of the defendants comes in and we learn that the written contract and title subsists, we are quite satisfied that the defendants should be held to stand in no new or different relation, from that created by the contract itself; and further, we are not sure that the Congregational society themselves were debtors, according to the terms of the contract, and the admissions of the defendants. The defendants uniformly denied it; but at any rate, as to themselves, and any liability because funds were in their hands, it appears that one of them had never collected but ten dollars, and that sum he had paid out, and that the other, at the service of the copying process, the 16th of May, 1848, had received $1,724.44, and paid out, and become responsible for $1,867.67. We are always unwilling to interfere with the verdict of the jury, but it is indispensable at times, and in a case so bald and palpable as this, we cannot hesitate a

moment. It is not one of balanced testimony, but well nigh one, without any at all, and taking the whole together, there is not the least question in our minds, that the defendants were never the debtors of Mrs. Hewitt. For this reason we advise a new trial.

In this opinion the other judges concurred, except WAITE, J., who was disqualified.

New trial to be granted.