**William H. DENNLER, Adm'r of Estate of Alvin M. Mauer, Plaintiff,**

v.

**DODGE TRANSFER CORPORATION, Brooks Transportation Co., Inc., Plymouth Rock Transportation Co., and Alfred Johnson, Jr., Defendants.**

**Civ. A. No. 7354.**

United States District Court
D. Connecticut.

Jan. 24, 1962.

432

Frederick L. Comley, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiff.

Gregory C. Willis, Bridgeport, Conn., for Plymouth Rock Transp. Co. and Brooks Transp. Co.

Martin Gormley, Gormley & Gormley, New Haven, Conn., for Dodge Transfer Corp. and Alfred Johnson, Jr.

CLARIE, District Judge.

### PART I.

This was an action for damages for wrongful death arising out of a truck-pedestrian accident which happened in the Town of Fairfield on October 3, 1957, at about 7:00 o'clock P. M. This case had been previously tried and the jury could not agree on a verdict or the answer to all of the interrogatories submitted; in this trial no interrogatories were requested. The verdict was a general plaintiff's verdict against all four defendants in the amount of $63,682.84.

Before the conclusion of the case, all of the defendants stipulated that the issues raised by the cross-claims of the parties would not be decided by the jury, but by the court. Furthermore, the jury's finding of fact, legally arrived at, would govern the court in its application

of the law, when deciding the merits of the respective cross-claims.

All defendants now seek a new trial on the issues decided by the jury. It is claimed in their motion that the verdict is excessive, contrary to law and given under the influence of passion, prejudice and ignorance of the law. However, the claim that the verdict was excessive, was abandoned by the defendants at the hearing on this motion; hence it need not be considered here.

The defendants Johnson and Dodge Transfer Corporation claim that the jury could not reasonably have found the plaintiff, Dr. Mauer, free from contributory negligence, and his own negligence was not a material factor in causing his injuries and resulting death; and if such were the case it would bar a recovery by his estate in this action. Furthermore, error is claimed, because the court charged the jury on the doctrine of last clear chance. The defendants assert, that inasmuch as the defendant driver, Johnson, did not see the decedent prior to the truck's striking him, one of the essential elements of the doctrine has not been proven.

■ This latter reason advanced by the defendants is obviously untenable for several reasons. When the court's charge was given on the last clear chance doctrine, neither of defendants' counsel objected thereto. Rule #51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Therefore, it is untimely to make such a claim after the verdict has been accepted.

■■ Furthermore, the four essential elements of the doctrine are: (1) that the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes or in the exercise of ordinary prudence ought to have become aware, not merely of that fact, but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity, by the exercise of reasonable care to save the other from harm; (4) that he fails to exercise such care. Richard v. New York, N. H. & H. R. Co., 104 Conn. 229, 235, 132 A. 451 (1926). Thus, it is not an essential condition for the application of this doctrine, that the injuring party did or did not see the plaintiff, if in the exercise of ordinary prudence he ought to have become aware of his presence.

■ In this case the jury could have reasonably found that the driver Johnson ought to have seen the plaintiff, Dr. Mauer. He admitted seeing his wife, who left the center island esplanade together with her husband to cross the remaining two lanes of the roadway. There was substantial evidence that the doctor and his wife were only four or five steps apart as they crossed the highway; for the driver to see Mrs. Mauer and not her husband would unquestionably justify the jury's finding that the driver, by the exercise of ordinary prudence, should have seen the decedent in the zone of danger. The zone of danger in this instance included the two lanes of roadway on the north side of the center esplanade at the scene of the accident. Finally, it should be noted that the verdict was a general one without interrogatories; there was other evidence of negligence of the defendant which the jury could have found without considering or applying this doctrine.

■ The defendants' additional claim, that the jury could not reasonably have found the plaintiff's decedent was free from contributory negligence which materially contributed to the accident, is a question of fact within the province of the jury. "A verdict which is against the preponderance of the evidence, or against the weight, or even the great weight of the evidence, or reaches a conclusion which the court upon an examination of the evidence would not have

reached, will not be set aside upon either of these grounds." Richard v. New York, N. H. & H. R. Co., 104 Conn. 229, 232, 132 A. 451, 452 (1926); Hewitt v. Wheeler, 23 Conn. 284, 302 (1854); Hill v. Bennett, 23 Conn. 363, 365 (1854). Similarly, the verdict will not be set aside where the evidence is conflicting, unless its manifest injustice is "so plain and palpable as to justify the suspicion that the jury or some of its members were influenced by prejudice, corruption, or partiality." Roma v. Thames River Specialties Co., 90 Conn. 18, 19, 96 A. 169 (1915); Donovan v. Connecticut Co., 86 Conn. 82, 85, 84 A. 288 (1912). If on the evidence as presented and under the pleadings, the jury could have reasonably found in accordance with the verdict as rendered, then it cannot be set aside as against the evidence. Goodman v. Norwalk Jewish Center, Inc., 145 Conn. 146, 154, 139 A.2d 812 (1958).

The essential facts of the case pertaining to this issue, which the jury might reasonably have found are these: It was dusk on October 3, 1957 shortly after 7:00 o'clock P.M., when the accident occurred. The plaintiff decedent, Dr. Mauer, and his wife left the Pequot Motel on the south side of the Boston Post Road to look for a place to eat. The immediate area was commercial; it included a motel, a restaurant, two gasoline stations (one on either side of the highway) and several small businesses. The highway runs generally east and west and an esplanade in the center separates the four-lane highway at the scene; there were no pedestrian sidewalks in the area. The street lights were lighted; one was located in the immediate area as identified on the map, plaintiff's Exhibit B, at the intersection of the Post Road and Center Street; in addition there was the artificial light of the gas stations and the motel. The topography of the roadway permitted visibility from the east toward the accident location for several hundred feet; there was but a one-two percent rise in the grade of the road westerly; the pavement was dry, the weather clear. There was no designated cross-walk at the point of decedent's crossing.

Dr. Mauer and his wife, after having crossed the two southerly lanes from the south toward the north, stopped about one foot east of the island esplanade and waited for traffic to pass. They looked for approaching traffic and saw the lights of the defendants' vehicle approaching from the east approximately 500–600 feet away; Dr. Mauer said, "Let's go, I think we can make this one." The two started to go across together. The doctor hesitated momentarily and then proceeded; four to five steps separated him and his wife as they crossed perpendicular to the highway. There was no evidence that either of them continued to watch the approaching defendants' vehicle, as they proceeded. Mrs. Mauer jumped as the truck was about to hit her and avoided the contact.

The driver of the truck admitted seeing Mrs. Mauer crossing the highway 150 feet away but denied seeing the decedent; the driver at no time prior to hitting the decedent applied his brakes. He testified to taking his foot off the gas pedal and eased his vehicle over from the extreme right hand lane to the left, so that he might avoid Mrs. Mauer, and his vehicle straddled the tarred line separating the two concrete lanes. It was while travelling in that location on the roadway that he felt the impact of the decedent's body. He admitted that when he first saw Mrs. Mauer he was travelling about 30–35 miles per hour and could have braked and stopped his truck before reaching her; however, it was not until the impact that he first applied his brakes.

Section 52–114 of the Connecticut General Statutes, Revision of 1958, provides in part: "In any action to recover damages for negligently causing the death of a person, or for negligently causing personal injury or property damage, it shall be presumed that such person whose death was caused or who was injured or who suffered property damage was at the time of the commission of the alleged negligent act or acts, in the exer-

cise of reasonable care. If contributory negligence is relied upon as a defense, it shall be affirmatively pleaded by the defendant or defendants, and the burden of proving such contributory negligence shall rest upon (them) * * *."

■ The statutory presumption in this case, therefore, was that Dr. Mauer was in the exercise of reasonable care at the time he was struck. The defendants alleged and it is their burden to prove by a fair preponderance of the evidence, that the plaintiff decedent was guilty of contributory negligence, which materially contributed to his injuries and resulting death. Koops v. Gregg, 130 Conn. 185, 188, 32 A.2d 653 (1943).

■ Whether or not the defendants fulfilled their burden is a question of fact within the province of the jury to determine. The court's charge to the jury, to which there were no exceptions taken on this issue, provided in part: "The negligence of a plaintiff which will defeat a recovery, is of the same kind and character as the negligence of a defendant which will support a recovery and the test of causal connection which must exist between the negligence of the plaintiff and his injuries is the same; and if the plaintiff was himself negligent in such a manner, the defendants cannot be held liable and your verdict must be for the defendants, even if the plaintiff was guilty of even slight negligence which materially contributed to his injuries and resulting death."

"Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court (the appellate court) be that a different result should have been reached." Horvath v. Tontini, 126 Conn. 462, 464, 11 A.2d 846, 847 (1940); L'Heureux v. Hurley, 117 Conn. 347, 359, 168 A. 8 (1933).

Thus the jury's finding in this case is one which must be sustained. There was substantial evidence which the jury could have accepted and believed which would justify and sustain their conclusion.

The two defendants, Brooks Transportation and Plymouth Rock Transportation claim that the jury could not reasonably have found that truck driver, Johnson, was the agent of Brooks and/or Plymouth Rock.

Title ownership of the trailer was in Brooks; it was in the temporary possession of Plymouth Rock in Boston, Massachusetts, under a general agreement whereby both companies regularly interchanged trailers as connecting interline carriers. This trailer was selected to make the trip in question, so that it might ultimately be returned to Brooks, a Richmond, Virginia corporation.

■ Plymouth Rock was a common carrier with its principal office in New York City. It had a trailer-load of bonded whiskey to be transported for a third party from Boston to Washington, D. C., and it was essential that the load arrive in New York City before midnight to meet a connecting trailer which would complete the haul to its destination. Plymouth Rock contracted with the J. F. Gurry Transportation Company to haul this trailer to New York under Plymouth Rock's Interstate Commerce Commission certificate and franchise; and subsequently paid Gurry after the accident for the use of the equipment and services rendered. Gurry was itself an "exempt carrier" and not authorized to haul as a common carrier; thus its equipment, in this case a tractor, was leased to Plymouth Rock under terms expressed in defendants' "Exhibit 2 B", which is self-explanatory. Plymouth Rock and Gurry had done similar business for 5–6 years prior to this occasion and continued to do so thereafter. There was nothing in said lease agreement, which prohibited a sublease or assignment of the contract for the hauling service to be rendered. The jury could reasonably have found that if Gurry's equipment broke down mechanically, as it did in this case, he had implied authority to take the necessary steps to complete the delivery of the load

particularly where there was an agreed time schedule to meet, even if it meant arranging for another tractor and driver to complete the trip, as was done in this instance.

With its tractor disabled, Gurry contacted Johnson, who had delivered a load of freight in Boston from New York on the day previous. He operated a tractor-trailer owned by Dodge Transfer Corporation as its employee and was about to return the trailer empty back to New York City. Johnson agreed with Gurry, for valuable consideration, to haul the Plymouth Rock freight load with Dodge Transfer's tractor and Gurry would send down the empty Dodge trailer to New York later that day. It was while hauling this load over the usual route, that the vehicle became involved in this accident which caused the death of the plaintiff's decedent.

All three trucking companies denied that Johnson was their agent at the time of the accident. However, in addition to Gurry's implied authority to turn the trip over to the defendant Johnson in the emergency, thereby making Johnson the agent of Plymouth Rock, there was also evidence that Plymouth Rock had ratified Gurry's actions in substituting a different tractor and driver.

Two official reports filed in sequence after the accident with the Connecticut Public Utilities Commission by and on behalf of Plymouth Rock described Johnson as its driver. There was no evidence offered at the trial to explain away this admission. Furthermore, the day following the accident, when the consequences of the trip were known, Johnson continued on to New York with the same tractor and trailer and delivered the cargo with its manifest to the Plymouth Rock Terminal.

The rule of law applicable to the agency question, as it affects Dodge Transportation, the owner of the tractor unit and Brooks, the owner of the trailer, is clear. Section 52–183 of the Connecticut General Statutes, Revision of 1958, provides in part: " * * * the operator, if he is other than the owner of * * * (the) motor vehicle, shall be presumed to be the agent and servant of the owner of such motor vehicle and operating the same in the course of his employment, and the defendant shall have the burden of rebutting such presumption."

Thus, driver Johnson is presumed to be the agent of Dodge Transportation and Brooks as a matter of law. "The presumption raised by the statute is not one which is overcome as soon as any substantial countervailing evidence is introduced but rather is one which shifts the burden of proof to the defendant(s) and is effective until the defendant(s) satisfies the trier (jury) by a fair preponderance of the evidence as to what the true facts of the situation were." Neville v. Adorno, 123 Conn. 395, 396, 195 A. 613 (1937); Lockwood v. Helfant, 126 Conn. 584, 587, 13 A.2d 136, (1940).

The jury were not obliged to believe and accept the testimony offered by the defendants disclaiming the agency of Johnson; contrariwise there was substantial evidence which they could have accepted indicating an implied authority or a ratification of his conduct.

This statutory presumption is applicable to the defendants, Dodge and Brooks, in this case. Muraszki v. William L. Clifford, Inc., 129 Conn. 123, 26 A.2d 578 (1942). The Restatement of Conflict of Laws, § 387, provides that when a person authorizes another to act for him in any state and the other does so act, whether he is liable for the tort of the other is determined by the law of the place where the wrong is committed. A pre-requisite to the application of this rule is that the alleged agent be authorized to enter the second state on behalf of the alleged principal. This pre-requisite is met in regard to both Dodge and Brooks. Neither offered substantial or persuasive evidence at the time of the trial to rebut the presumption that Johnson was their agent acting within the scope of his employment.

Brooks argued that this statute was not applicable, because the trailer in this instance was not a commercial motor vehicle within the statutory definition under § 14–1, subsection 6, because it was not engaged in the business of the registrant at the time of the accident. First, it should be noted that these statutory definitions are specifically limited to Chapter 246 of the General Statutes, which pertain to the administrative laws of the motor vehicle department; furthermore, the term " 'motor vehicle' means any vehicle propelled or drawn by any power other than muscular * * ". Once a trailer and tractor are attached and pulled over the highway by means of a motor, the trailer becomes an integral part of the unit and constitutes one motor vehicle.

How can driver Johnson be the agent of three principals; certainly that is a situation which is unusual, but not necessarily unique.

In Gordon v. S. M. Byers Motor Car Co., 309 Pa. 453, 164 A. 334 (1932), the Supreme Court of Pennsylvania sustained a jury verdict, holding that a truck driver was the agent of two separate companies and that both companies were responsible for his negligent acts, when at the time of the negligence, he was acting on account of both. Comparable agency relationships were found in Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 45 A.2d 59 (1946); Keitz v. National Paving and Contracting Co., 214 Md. 479, 134 A.2d 296, 136 A.2d 229 (1956). The Restatement of Agency, § 226, also confirms such a situation. It provides, "a person may be the servant of two masters, not joint employers, at one time as to one act if the service to one does not involve abandonment of the service to the other."

It is well to note that all three trucking company defendants benefited from Johnson's services. Plymouth Rock transported its load of freight to its terminal in New York City; Dodge not only had its tractor returned to New York over the same route it would normally travel, but was to receive remuneration for moving the trailer and its cargo; Brooks benefited under its interchange agreement with Plymouth Rock, in that its trailer was being returned to it via New York and Washington, D. C., making it available for future pay loads. Driver Johnson, at the time of the mishap, was effecting the purposes of all three trucking companies without necessarily abandoning his intention to serve any one of them.

Merely because these defendant trucking companies have scrambled and intermingled their relationship does not serve to defeat the plaintiff's rights. To hold otherwise would be to put a premium on whatever confusion the defendants have unwittingly generated. To prevent such a situation from benefiting the defendants was obviously one of the prime purposes which the Connecticut Statute was designed to accomplish; the presumption of agency and the shifting of the burden to the defendant owners to rebut it is an issue of fact, which if reasonably supported by the evidence will not be disturbed. The jury's verdict that defendant Johnson was the agent of Plymouth Rock, Brooks and Dodge and acting within the scope of his employment as to all of them is not contrary to law.

The motion to set aside the verdict and grant a new trial to each of the defendants as requested is denied.

### PART II.

### DEFENDANTS' CROSS-CLAIMS SUBMITTED AND ARGUED ONLY TO THE COURT

The defendant, Dodge Transportation, has filed a cross-claim against the defendants, Plymouth Rock and Brooks, claiming that if Dodge should be called upon to pay any damages to the plaintiff, then the defendants, Plymouth Rock and Brooks are liable to Dodge for said damages. Similarly, the defendants, Plymouth Rock and Brooks, have filed a cross-claim to the same effect against the defendants, Dodge and Johnson.

The jury, by their general verdict, found that Johnson was the common agent of all three defendant principals, Dodge, Plymouth Rock and Brooks, and was acting within the scope of his employment at the time of the accident; and that all three defendants were thus jointly liable for Johnson's negligent acts. In this respect, counsel for Johnson and Dodge and counsel for Plymouth Rock and Brooks, stipulated on the record that to the extent the jury legally found the facts of agency, the court would be bound by them and on that basis should decide the merits of the cross-claims.

For reasons hereinbefore discussed in "Part I" of this memorandum, the court confirms the finding of agency by the jury as being not contrary to the law.

 Normally, there can be no contribution or indemnification between joint tort-feasors. Rose v. Heisler, 118 Conn. 632, 174 A. 66 (1934); Caviote v. Shea, 116 Conn. 569, 165 A. 788 (1933); Wise v. Berger, 103 Conn. 29, 130 A. 76 (1925). This is so because the courts will not give relief to a wrongdoer. Where, however, the party seeking contribution or indemnification is not an actual wrongdoer, an exception is made. Such an exception has been recognized in Connecticut. Fidelity & Casualty Co. of New York v. Jacob Ruppert, Inc., 135 Conn. 307, 63 A.2d 849 (1949); Preferred Accident Ins. Co. of New York v. Musante, Berman & Steinberg Co., 133 Conn. 536, 52 A.2d 862 (1947); Bailey v. Bussing, 28 Conn. 455 (1859). These cases support the general principle, that where several parties are jointly liable for a tort, one of them for the reason that he is the actual wrongdoer, the other because he is chargeable with constructive fault, the latter is entitled to recover from the former the amount which he has been compelled to pay as damages.

 In the case at bar, the defendant, Johnson, is the actual wrongdoer.

He was the one who committed the negligent act which caused the decedent's death and the plaintiff's damages. The defendant-trucking companies' liability depends on their relationship to the actual wrongdoer, Johnson. Their liability is said to be vicarious. In view of this, they could hardly be classified as actual wrongdoers, but on the contrary are chargeable merely with "constructive fault." Therefore, the defendant-trucking companies are entitled to indemnification from their agent, Johnson, for any amount which they may pay in satisfaction of the judgment.[1]

 Similarly, contribution between the defendant-trucking companies is allowable provided they are called upon to pay more than their proportionate share and indemnification from the defendant, Johnson, is impossible. The Restatement of Agency, Sub-section 317A(1) bears out this result. It is provided therein that: "unless otherwise agreed between them, one of two principals who has made expenditures because of the conduct of a common agent is entitled to contribution from the other principal if, as between the two, each was equally responsible for the agent's conduct." The interpretive comment to sub-section 317A(1) indicates that in addition to partners, the rule applies to a situation, such as the one here, where several persons, although not acting jointly, become responsible for the conduct of a servant who has been employed by them and who subjects all of them to tort liability by an act which comes within the scope of employment with respect to all of them.

 The question of contribution and indemnification between the defendants in this case is compounded by the problem of whether or not the cross-claims are premature, in that none of the defendants have paid anything in satisfaction of the judgment against them. Ordinarily, a joint obligor may not maintain an action for contribution or indem-

1. Maryland Cas. Co. v. Employers Mut. Liability Ins. Co., 208 F.2d 731 (2d Cir. 1953); Stulginski v. Cizauskas, 125 Conn. 293, 5 A.2d 10 (1939); Bailey v. Bussing, 28 Conn. 455 (1859).

nification until he has paid more than his share of the judgment.[2]

■ However, under Rule 13(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A., a claim may be asserted against a party who is or may be liable to the cross-claimant. In certain cases rule 13 (g) has the effect of accelerating the accrual of a right[3] and in a limited sense it has that effect in this case. Nevertheless, the rule may not be used to enlarge substantive rights and the cross-claimant must have a valid claim under state law against his co-party. Whether he has such a claim is a substantive matter and dependent on state law for its determination.

Because of this, it has been held that a cross-claimant cannot obtain a money judgment against his co-defendant for contribution until he has paid more than his pro-rata share of any judgment obtained by the plaintiff and to do otherwise would be an attempt to enlarge the substantive rights of contribution, where under the applicable state law there is no right of contribution until the joint tort-feasor has paid more than his share of the judgment. Smith v. Whitmore, 270 F.2d 741 (3rd Cir. 1959).

■ However, a judgment may be entered for contribution or indemnification, conditioned on the cross-claimant paying more than his share of the judgment, without enlarging substantive rights of contribution as they exist under the state law.[4] In entering such a judgment the ultimate result reached in the federal court would be the same, as if the litigation had been conducted in the state courts.

An order may be entered as follows:

ORDERED AND ADJUDGED: That the right of indemnification exists in favor of the defendants, Dodge Transfer Corporation, Plymouth Rock Transportation Company, and Brooks Transportation against the defendant, Alfred Johnson, Jr., and the said Dodge Transfer Corporation, Plymouth Rock Transportation and Brooks Transportation may hereafter have judgment against the said Alfred Johnson, Jr. for any amount which anyone of them proves he has paid in satisfaction of this judgment.

IT IS FURTHER ORDERED AND ADJUDGED: That a right of contribution exists between the defendants, Dodge Transfer Corporation, Plymouth Rock Transportation Company and Brooks Transportation Company and that anyone of them may hereafter have judgment against the others for any amount which it proves it has paid to the plaintiff, William H. Dennler, Administrator of the Estate of Alvin M. Mauer in excess of its pro-rata share.

2. Azzolina v. Order of Sons of Italy, 119 Conn. 681, 692, 179 A. 201 (1935); Waters v. Waters, 110 Conn. 342, 148 A. 326 (1930); Restatement, Restitution § 77 and § 82 (1937); 1 Harper & James, Torts § 10.2, at 719 (1956).

3. 3 Moore, Federal Practice § 13.34, at 93 (1948); Bohn v. American Export Lines, Inc., 42 F.Supp. 228 (S.D.N.Y. 1941).

4. Brandt v. Olson, 190 F.Supp. 683, 688 (N.D.Iowa 1961); Falciani v. Philadelphia Transp. Co., 189 F.Supp. 203 (E.D. Pa.1960); Smith v. Whitmore, 270 F. 2d 741 (3rd Cir. 1959); D'Onofrio Construction Company v. Recon Company, 255 F.2d 904 (1st Cir. 1958). Brown v. Cranston, 132 F.2d 631, 148 A.L.R. 1178 (2d Cir. 1942), certiorari denied, Cranston v. Thompson, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698 (1943) is distinguishable from the case at bar; in this case, there has already been a joint money judgment recovered by the injured party against the joint tort feasors and the decree to be issued here is conditioned on the cross-claimant paying more than its pro-rata share of the judgment. Furthermore, Connecticut does not have a statutory provision such as the New York one that was involved in Brown v. Cranston, supra.