Steven GIESER, et al., Plaintiffs-
and Respondents,

v.

Edward Alan HAMBEK, Defendant, Third-
Party Plaintiff and Appellant,
and
Jerel A. Weber, Third-Party Defendant
and Respondent.

Civ. No. 8666.

Supreme Court of North Dakota.

June 22, 1971.

Ella Van Berkom, Minot, for defendant, third-party plaintiff and appellant.

Pringle & Herigstad, Minot, for plaintiffs and respondents.

Joseph P. Stevens, Minot, for third-party defendant and respondent.

TEIGEN, Judge.

This case was tried to the court without a jury. The defendant Hambek has appealed from the judgment and demanded a trial de novo in this court.

The four plaintiffs seek damages from the defendant Hambek for personal injuries which each of them sustained when

the automobile in which they were riding struck a curb and lamppost on a bridge, as a result of the automobile being pushed by another automobile owned and driven by the defendant Hambek. Hambek impleaded Weber for liability over. Weber was the owner and driver of the automobile being pushed and in which the plaintiffs were passengers. Weber counterclaimed against Hambek for damages to his automobile.

Following trial, the court awarded judgment in favor of the respective plaintiffs, in amounts as follows: Steven Gieser, $7,599.83; Robert D. Gieser, $765.57; Max J. Gieser, $500.00; and Jerry O. Weatherly, $2,500.00. It dismissed Hambek's third-party complaint against Weber and awarded judgment on Weber's counterclaim against Hambek in the amount of $500.00 for damages to Weber's automobile.

It appears, without dispute, that all of the parties to this action were in various degrees of intoxication on August 17, 1968, at about 7 p.m., when this accident occurred. The four plaintiffs and the third-party defendant Weber had spent a good part of the day in various bars drinking beer. Weber was a minor and, for that reason, apparently had much less to drink than the others. Hambek had also been drinking beer earlier in the day. He had with him one Robert Wetmur and had picked up his cousin, Kenneth Korgel, from his place of employment. About 7 p.m., all eight persons were at or near the Kozy Bar in Minot, North Dakota. A decision was made that they would go to the Blue Moon, a nightclub which is located east of Minot, where Robert Wetmur was going to play the drums for a jam session. All eight persons entered Weber's automobile, preparatory to going to the Blue Moon. However, Weber's automobile would not start. Hambek also had an automobile in the vicinity and, at the request of the plaintiffs and Weber, Hambek got his automobile and drove it behind the Weber automobile in order to push it and get it started. Wetmur and Korgel joined Hambek in his automobile. The plaintiffs and Weber, with Weber at the wheel, remained in Weber's automobile. When Weber gave a signal, Hambeck pushed Weber's automobile easterly on East Central Avenue in Minot. Weber's automobile was equipped with an automatic transmission and it was necessary to push it at the rate of about 30 miles per hour in order to engage the automatic transmission. The two automobiles traveled about 740 feet from the point of beginning to the point where the Weber automobile struck the curb of what appears to be the end of East Central Avenue where Central Avenue curves onto Sixth Street. It appears that East Central Avenue ends at this point and is intersected by Sixth Street. The curve onto Sixth Street to the right is gradual. It is less than a 90-degree turn. It appears that Weber attempted a right turn onto Sixth Street going south but instead hit the curb on the far side of the street. The Weber automobile then bounced southerly, approximately 30 feet onto the Sixth Street bridge which crosses the Mouse River, and hit a lamppost located on the bridge. It stopped, facing the lamppost, with its rear end toward the middle of Sixth Street. It was severely damaged and the plaintiffs were injured in the mishap. The Hambek automobile negotiated the turn onto Sixth Street but struck the right rear bumper of the Weber automobile at about the time it came to rest. There was very slight damage to the Hambek automobile and no one in it was injured.

The foregoing facts are not in dispute. From this point, however, the evidence is in conflict. The defendant Hambek and his passengers, Korgel and Wetmur, testified that Hambek pushed the Weber automobile at a speed of approximately 30 miles per hour and that after he had pushed it a distance of about 450 feet (at or before passing the Westland Oil Company office building), the Weber automobile started pulling ahead and, from that point, continued under its own power, and that Hambek followed behind at a distance of

one to two car lengths at about the same speed.

This conflict in the testimony was resolved by the trial court in favor of the plaintiffs and the counterclaimant Weber.

Two disinterested witnesses testified for the plaintiffs and the counterclaimant Weber. One was a 15-year-old girl who was walking east on the south side of East Central Avenue, in front of the Westland Oil Company office building, when she saw the two automobiles pass on East Central Avenue. She testified that she saw the two automobiles pass her going east; that they were going pretty fast and that one was pushing the other. She testified that she could see them until they went around the "bend by the bridge" and that they were "either touching or real close." A service station owner and operator, whose service station is located on the south side of East Central Avenue at a point just before the curve leading to the bridge, testified that he saw the two automobiles pass his service station; that he was in the back room repairing a tire when he heard an "awful roar"; that he looked out through the front room and the open doors and saw the two automobiles going by. He described them as being "right together"—"they were touching each other" as they passed his service station. It appears that this witness's view of the two automobiles, from the back room of his service station, through the front room and the doors thereof, and between two gasoline pumps in front of the building with a signpost located between them, gave him a channelled view to the street and a limited time and distance during which he could see a passing automobile. Following the trial and on agreement of all of the parties, the trial judge, with the attorneys, visited the scene and the service station. The trial judge viewed the vantage point from which the service station operator testified he had seen the automobiles pass and the proximity of the service station to the curve and the bridge. The trial court,

in its memorandum decision, concluded that "By reason of the corroboration by the testimony of the two disinterested witnesses * * *" which "testimony is fortified by the Court's having visited Theusch's gasoline station", the testimony of the plaintiffs is more credible than that of the defendant and his witnesses.

Based on its findings, the trial court concluded that Hambek did not "exercise the care which an ordinarily prudent person would exercise under the existing circumstances, or care commensurate with the known or foreseeable dangers incident to the operation," and that his negligence consisted in pushing the Weber automobile too fast to a point too close to the turn and the bridge, and that such negligence was a proximate cause of the plaintiffs' injuries and the damage to the Weber automobile. The trial court also concluded that Hambek had not sustained his burden to prove the pleaded affirmative defense of contributory negligence or assumption of risk. The trial court also found that the three Gieser brothers were very intoxicated, the plaintiff Weatherly was comparatively sober, and the counterclaimant Weber was in a state of intoxication somewhat less than the Gieser brothers. The trial judge reasoned that, if Weber was as intoxicated as Hambek's testimony would indicate, he was doubtful that Hambek would have agreed to push the Weber automobile to get it started, or that Weatherly who was comparatively sober, would have ridden in the Weber automobile.

In regard to assumption of risk as a defense, the trial court found that there was nothing in the record to indicate that the plaintiffs and Weber had knowledge that Hambek would push the automobile in a negligent manner, nor that they consented thereto. Although Hambek had drunk some beer on the day of the accident, it appears that the quantity was relatively small and that several hours had elapsed between his last drink and the accident.

■ The testimony of the parties was in direct conflict on important issues. At the trial, the parties and their witnesses appeared in person and testified. In addition, the trial court viewed the scene and the vantage point of the two disinterested witnesses. The trial court had the opportunity to hear the testimony and to observe the demeanor of the witnesses and the various incidents of the trial, which are not shown by the cold and lifeless record. The trial court also had the advantage of breathing the air of the trial and was in an immeasurably better position to find the real facts than we are from the cold record. Notwithstanding that the appeal is here for trial de novo, we must give appreciable weight to the findings of the trial court. Seco, Inc. v. Gauvey Rig & Trucking Company, 166 N.W.2d 397 (N.D.1969); Hillius v. Wagner, 152 N.W.2d 468 (N.D. 1967); Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966); Pauly v. Haas, 84 N.W. 2d 302 (N.D.1967).

■■ On the basis of the record before us and giving appreciable weight to the findings of the trial court, we agree with the trial court that the plaintiffs have sustained the burden of proof, establishing negligence on the part of Hambek, which was a proximate cause of their injuries. We also agree that Hambek has not sustained the burden of proof to establish contributory negligence or assumption of risk on the part of the plaintiffs. We also agree with the trial court that Hambek, in pushing the Weber automobile, had the duty to exercise ordinary care, which is the exercise of that care which an ordinarily prudent person would exercise under the existing circumstances. We find no statutes or case law in this state dealing with the duty of a driver of a vehicle while pushing another vehicle which is disabled. The general law on this subject, with which we agree, is set forth in 8 Am. Jur.2d Automobiles and Highway Traffic, Sec. 842, at 401, as follows:

"Pushing a disabled or stalled motor vehicle along a highway or street requires the exercise of the care which an ordinarily prudent person would use under existing conditions or circumstances, or commensurate with known or foreseeable dangers incident to the operation. Operating a motor vehicle which is pushing another requires a high degree of skill; power must be exercised carefully, brakes must be used quickly and accurately, steering is more difficult than usual, and the operator of the pushing vehicle is under a duty to know and give the signals required of the operator of a motor vehicle. Whether he has exercised due care in the particular case is generally a question for the jury. In a number of cases the owner or operator of a motor vehicle pushing another vehicle has been held, or properly found, negligent under the circumstances, in connection with the pushing operation. But in other cases it has been held that negligence or contributory negligence incident to the pushing of one motor vehicle by another has not been established with respect to the operator of the pushing vehicle.

"Pushing operations are not within the letter or spirit of the general statutory provisions regulating or prohibiting the stopping of motor vehicles or the removal of such vehicles from the highway, and the operator of a pushing vehicle is not subject to liability or negligence predicated alone upon the violation of such a statute."

In respect to the question of damages, which is not in dispute here, we find that the evidence is not in conflict. The special damages were established by documentary evidence introduced at the trial and the trial court's finding of general damages for pain and suffering is, under the circumstances, fair and reasonable.

In view of our findings that Hambek continued pushing the Weber automobile, Weber made a reasonable explanation of the action he took at the curve. He testified that when he started to make a right turn the pushing by the Hambek automobile from behind caused the rear end of the Weber automobile to slide toward the left, thus necessitating turning his steering wheel to the left to prevent his automobile from sliding sideways into the bridge. Under these circumstances, Weber's action was not negligence.

For the reasons aforesaid, we affirm the judgment.

ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

STRUTZ, C. J., concurs in the result.