**In re Peggy K. BEEGHLY, Plaintiff,**

v.

**Donald G. MACK and CLK Business–Investment Trust, Defendants.**

**No. 01SA18.**

Supreme Court of Colorado,
En Banc.

March 26, 2001.

Kelley & Rich, P.C., Jeffrey R. Kelley, Charles H. Rich, III, Englewood, CO, Attorneys for Plaintiff.

Fisher, Sweetbaum & Levin, P.C., Alan D. Sweetbaum, E. James Wilder, Denver, CO, Attorneys for Defendants.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, the Plaintiff, Peggy K. Beeghly (Beeghly), seeks to gain possession of certain property from the Defendant, Donald G. Mack (Mack), trustee of CLK Business–Investment Trust (Trust), also a Defendant in this action. Beeghly brought a forcible entry and detainer (FED) action in the trial court to obtain possession of the subject property. At the request of Mack and the Trust, we issued a rule to show cause, pursuant to C.A.R. 21, why a default judgment issued by the trial court should not be vacated. The trial court issued a default judgment and granted possession of the property to Beegh-

ly because Mack and the Trust failed to post bond as ordered pursuant to section 13–40–114, 5 C.R.S. (2000), of the FED statute. We make the rule to show cause absolute.

## I.

The facts of this case are contested by both parties. One of the issues in contention is ownership of property located at 9137 North Delbert Road, Parker, Colorado (the property). Beeghly, Mack, and the Trust all agree that on February 29, 2000, Beeghly closed on the property, and obtained a warranty deed from Michael J. Shidler (Shidler), who was then the trustee of the Trust,[1] after having obtained a loan in the amount of $632,000 from Washington Mutual. Mack contends that Beeghly also received $10,000 at the time of the closing. Mack argues that the transaction in which Beeghly obtained title to the property was really an equitable mortgage, and not a purchase. Mack alleges that this transaction was developed by Shidler, the trustee at the time, in order to prevent a foreclosure of the property, the Trust's sole asset. Mack contends that Beeghly merely agreed to refinance the property, and thus, is only the record owner, not the equitable owner. Beeghly, however, argues that this transaction was strictly a purchase of the property, and therefore, she is the lawful owner of the property.

In March 2000, Beeghly and Mack entered into a lease agreement for the property, where Mack agreed to pay a monthly rental amount of $3,994.67. This amount is the exact amount of Beeghly's monthly mortgage payments to Washington Mutual. For some time, Mack made the monthly rental payments directly to Washington Mutual. Sometime during the summer of 2000, a disagreement arose between Beeghly and Mack, whereby Mack stopped making monthly rental payments. Mack contends that in July 2000, Shidler resigned as trustee of the Trust, at which time Mack became the trustee.

---

1. Beeghly contends that the property was not an asset of the Trust at the time that she obtained title to the property. However, Beeghly also alleges that she received a warranty deed from Shidler, who Mack argues was the trustee of the Trust at that time. Because the trial court granted Beeghly's motion for default judgment against Mack and the Trust, the factual disputes between the parties were not resolved below, and thus, cannot be addressed by this court.

On November 27, 2000, Beeghly filed a complaint in unlawful detainer pursuant to sections 13–40–101 to 13–40–123, 5 C.R.S. (2000), seeking possession of the property, back rent, late fees, costs, and attorney fees. On December 5, 2000, Mack filed an answer to the complaint, denying that Beeghly was the beneficial owner of the property. On December 7, 2000, the Trust filed a motion to intervene in the action, claiming that it was the rightful owner and thus, had an interest in the outcome of the litigation. On that same date, Mack and the Trust also filed an amended answer, asserting counter-claims such as quiet title, declaratory judgment, breach of contract, unjust enrichment, and breach of fiduciary duty. In addition, Mack and the Trust filed a motion to continue the trial of the issue of possession of the property.

On December 8, 2000, the trial court granted both the Trust's motion to intervene and the motion to continue the trial. The continuance was granted until January 12, 2001, conditioned upon the collective payment of a bond by Mack and the Trust, on or before December 12, 2000, in the amount of $20,000 in accordance with section 13–40–114. During settlement negotiations, the parties entered into a stipulation to extend the time for filing the bond to December 15, 2000. It does not, however, appear that this stipulation was ever approved by the trial court.

After settlement negotiations broke down, on or around January 10, 2001, Beeghly filed a motion for default judgment for possession based on the failure of Mack and the Trust to post the bond ordered by the trial court.[2] On January 11, 2001, the trial court held a telephone hearing on the motion for default judgment in which it allowed each party five minutes of argument. The trial court ultimately granted the motion for default judgment, holding that Beeghly was entitled to possession since Mack and the Trust failed to post the bond. The trial court also denied Mack's and the Trust's request for a stay of the possession order. Mack and the Trust then brought this C.A.R. 21 petition requesting that this court issue a rule to show cause why an order should not be issued vacating the trial court order granting the motion for default judgment.

## II.

The forcible entry and detainer statutory scheme is designed to provide a quick mechanism for resolving possession disputes between landlords and tenants. *See* §§ 13–40–101 to 13–40–123, 5 C.R.S. (2000); *Butler v. Farner*, 704 P.2d 853, 856–57 (Colo. 1985). To this end, if either party requests a delay in trial longer than five days, the trial court may, in its discretion, and upon good cause shown, require either of the parties to give bond to the opposite party in the amount of damages that may be caused by the delay. § 13–40–114.[3]

In this case, the trial court granted a default judgment for possession to Beeghly because Mack and the Trust failed to post a bond pursuant to section 13–40–114, which the trial court ordered as a condition of granting the request for continuance. In our analysis of whether the trial court erred in granting the default judgment for possession for failure to comply with section 13–40–114, we must look to basic rules of statutory construction to determine whether the bond statute authorizes the action taken by the trial court. "A court's primary task in statutory construction is to ascertain and give effect to the legislative purpose underlying a statutory enactment." *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990). In determining statutory purpose, we first look to the language used by the legislature and give words their commonly accepted and

---

2. One of the supporting documents filed with this court is a copy of a cashier's check dated December 28, 2000, payable to Peggy Beeghly in the amount of $20,000. However, it is unclear if this check was part of the settlement negotiations, or if it was offered as a late filing of the bond ordered by the trial court.

3. Section 13–40–114 specifically provides that: "If either party requests a delay in trial longer than five days, the court in its discretion may, upon good cause shown, require either of the parties to give bond or other security approved and fixed by the court in an amount for the payment to the opposite party of such sum as he may be damaged due to the delay." § 13–40–114, 5 C.R.S. (2000).

understood meaning. *Id.* When the language is clear and unambiguous, it may be presumed that the legislature meant what it clearly stated in the statute. *Id.*

The language of section 13–40–114 is clear. It specifically authorizes the trial court, within its discretion, to grant a request for continuance, and to order that such continuance be conditioned on the posting of a bond, with the amount of such bond to be determined by the trial court. § 13–40–114. It does not, however, authorize the trial court to issue a default judgment for failure to comply.

■  The inclusion of the bond provision in the FED statutory scheme evidences the legislature's recognition that even a brief delay in a trial for possession may damage the party entitled to possession. *Butler,* 704 P.2d at 857. The bond provision, therefore, serves the purpose of protecting a party who might suffer harm due to the opposing party's request for a delay in the proceedings. Thus, the purpose of the bond statute would not be served by allowing a default judgment to be issued for non-compliance. Instead, the remedy of an immediate trial for failure to post the bond would serve the statute's purpose, since an immediate trial on the merits would resolve the dispute between the parties, thus eliminating the need for payment to the opposing party of a sum that would compensate that party for a delayed trial.

As previously discussed, the FED scheme was meant to provide an expeditious resolution of possession issues involving landlord and tenant disputes. When a delay in the proceedings is requested, due either to the complexities of the situation or for other reasons, a continuance may be granted, conditioned upon the posting of a bond. If that bond is not posted when ordered by a court, the logical implication is that the trial will continue under the expedited schedule provided by the FED statutory scheme, not that the merits will be decided without a hearing.

■  The fact that the bond statute does not authorize default judgment is further evidenced by the legislature's failure to specifically include default provisions in section 13–40–114, and the legislature's inclusion of specific provisions for default judgment elsewhere within the FED statutory scheme. *See* § 13–40–111, 5 C.R.S. (2000). Specifically, the trial court may grant a default judgment where the named defendant fails to file an answer with the trial court within the time allowed for an appearance as specified in the summons. *Id.* Under the rule of interpretation *expressio unius exclusio alterius,* the inclusion of certain items implies the exclusion of others. *Dill v. People,* 94 Colo. 230, 235, 29 P.2d 1035, 1037 (1933). Therefore, because the legislature specifically included a default provision in section 13–40–111, but did not include such a provision in section 13–40–114, the legislature could not have intended to provide default judgment as a remedy for failure to post a bond. Instead, default judgment is specifically authorized under the FED statutory scheme only when the named defendant fails to file an answer pursuant to section 13–40–111.

■  Finally, the entry of a default judgment is the harshest of all sanctions, and should be imposed only in extreme circumstances. *Nagy v. Dist. Court,* 762 P.2d 158, 161 (Colo.1988). Here, the parties acknowledge that they were in the midst of settlement negotiations, and as such, agreed to an extension of time in which Mack and the Trust could post the bond. However, even after the agreed upon extension passed, it appears that no bond was posted. Although we do not condone Mack's and the Trust's failure to post the bond, the remedy imposed by the trial court was not authorized by section 13–40–114. Mack and the Trust filed a timely answer, and thus were not subject to the default provisions of section 13–40–111. The trial court did not find that there was any basis for a default judgment other than lack of compliance with the bond statute. Thus, the trial court imposed the sanction of default judgment based solely on the failure to post bond. Under these circumstances, the trial court should have ordered an immediate trial on the merits for the failure to post bond rather than grant the motion for default judgment.

■  Section 13–40–114 clearly gives the trial court discretion with respect to whether to grant a request for continuance and

whether a bond should be imposed, and if so, in what amount. However, that discretion is limited to what the statute authorizes. Although trial courts have broad discretion in imposing sanctions for non-compliance with rules, that discretion is not without limits. *See In re People v. Lee,* 18 P.3d 192, 196 (Colo.2001). Because the granting of a default judgment is a harsh remedy, and because section 13–40–114 does not authorize such a remedy for failure to post a bond, the trial court abused its discretion in granting the default judgment. By doing so, the trial court did not allow the parties to litigate this dispute on the merits, and precluded each party from having its day in court as provided for in the FED statutory scheme.

■■ The primary purpose of courts is to provide a forum for settling litigable matters between disputing parties. *Rudd v. Rogerson,* 152 Colo. 370, 375, 381 P.2d 995, 998 (1963). Thus, "unless enforcement of procedural requirements is essential to shield substantive rights, litigation should be determined on the merits and not on the basis of technical rules." *People v. Dickinson,* 197 Colo. 338, 339, 592 P.2d 807, 808 (1979). By entering a default judgment for possession based on the failure of the parties to comply with the bond statute, the trial court resolved the merits of this case. Moreover, the trial court exceeded its discretionary power as authorized by the bond statute. Therefore, the trial court abused its discretion in issuing the default judgment on possession, and accordingly, the trial court's default judgment cannot stand. Having determined that the trial court erroneously granted a default judgment on possession, we now briefly discuss the related issue of whether ownership must be determined prior to a ruling on possession in an FED action.

4. Beeghly argues that Mack has no standing to raise the ownership issue because he does not claim ownership in the property. Beeghly also argues that the Trust has no standing to raise the ownership issue because it does not claim possession of the property. Because there are factual issues that must be resolved by the trial court in order to understand the nature of the ownership and possession claims in this case, we do not address these arguments here.

## III.

■ Generally speaking, in an FED action, the issue of ownership must first be determined before possession can be resolved. *Lindsay v. Dist. Court,* 694 P.2d 843, 846 (Colo.1985). In *Lindsay,* we opined that although the case began as an FED action, it ultimately placed in issue the entire transaction between the two parties, and thus became a suit in equity to determine whether the petitioners were tenants subject to eviction, or owners subject to foreclosure. *Id.* The *Lindsay* case differed procedurally from this case, in that two separate law suits were filed, one an unlawful detainer action in county court, and the other an action challenging the validity of the agreement between the parties in district court. *Id.* at 844–45. However, the issues raised were similar to those presented in this case, specifically whether ownership must be determined prior to a ruling on possession being made.[4] In *Lindsay,* ownership of the property directly affected entitlement to possession, and as such, a determination of ownership was first required in order to properly assess which party was entitled to possession. However, there may be circumstances where the issues of ownership may not affect the right to possession, and thus, possession can be determined independent of resolving ownership.

In *Lindsay,* without determining whether there was an actual FED action pending in the district court,[5] we ultimately held that the district court action could properly resolve all issues in dispute between the parties, including who was rightfully entitled to possession. *Id.* at 846. Thus, notwithstanding the classification of a lawsuit between parties, when the issue of ownership is validly raised in an FED action, and directly affects the right to possession, ownership

5. As noted in the special concurrence, our decision in *Lindsay* also did not address whether the bond statute was applicable to the district court action under the circumstances of that case. 694 P.2d at 846–47 (Neighbors, J. specially concurring).

must be determined prior to a ruling on possession. *Lindsay*, 694 P.2d 843.

Mack and the Trust claim that their challenge to ownership of the property removed this dispute from the context of an unlawful detainer action, and as such, the trial court had no jurisdiction to order a bond pursuant to section 13–40–114. We reject this argument. We do not interpret *Lindsay* to require that an FED action is automatically terminated every time an issue of ownership is raised in such an action. To do so would render the FED statutory scheme meaningless, as parties would merely need to raise an issue of ownership to avoid the expedited proceedings, regardless of the merits of such a claim.

■ Instead, *Lindsay* supports the notion that an FED action may proceed, albeit simultaneously with other disputes among the parties, at least until the trial court determines who is entitled to possession. Accordingly, the bond statute is applicable when an FED action is brought, regardless of whether other issues regarding ownership may be raised and resolved during the pendency of that FED action.

Mack and the Trust also contend that *Reitze v. Humphreys*[6] supports the notion that once ownership is placed in issue, an unlawful detainer action is no longer appropriate. This interpretation is flawed. In *Reitze*, there were two separate actions filed, one seeking a determination regarding ownership of the property at issue (equity suit), and the other, an FED action. *Reitze v. Humphreys*, 53 Colo. 171, 125 P. 522; *Reitze v. Humphreys*, 53 Colo. 177, 125 P. 518. The circumstances of *Reitze* warranted dismissal of the FED action, since the FED action was filed subsequent to the equity suit, and since all of the issues that would have been resolved by the FED action were previously raised in the equity suit. *Reitze*, 53 Colo. at 175–77, 125 P. at 523–24. Accordingly, the continuation of the FED action in *Reitze* served no purpose, and was therefore dismissed. *Id.* Thus, *Reitze* does not support the proposition that when there are two ac-

tions filed regarding an ownership dispute related to a particular property, one being an FED action, the FED action is automatically terminated. Instead, in *Reitze*, we held that the equity suit sufficiently resolved the issues raised by the subsequent FED action, and thus, the FED action should either have been dismissed, or at a minimum, abated until the appeal of the equity suit had been resolved. *Reitze*, 53 Colo. at 176, 125 P. at 524.

Under the rule set forth in *Lindsay*, possession in this case cannot be decided without the trial court first determining whether ownership affects possession, and if so, resolving the issues of ownership. Accordingly, we remand this case to the trial court for a determination as to whether Mack and the Trust have raised meritorious claims regarding ownership. Once the trial court has determined whether the ownership issues raised are relevant to a determination of the possession interests in dispute through a full and fair hearing, the trial court can then decide entitlement to possession.

### IV.

The trial court abused its discretion in issuing a default judgment for possession for failure to post bond pursuant to section 13–40–114. The provisions of section 13–40–114 are still applicable in this case since the action pending before the trial court is an FED action, notwithstanding the other claims of ownership that have been raised by the parties. Moreover, in accordance with *Lindsay*, the trial court must consider the ownership issues raised by the parties, and determine if those issues affect possession prior to deciding who is actually entitled to possession. Accordingly, we make the rule to show cause absolute and remand this case to the trial court to first determine whether, under the circumstances presented in this case, ownership must be resolved before possession, and to then resolve possession on the merits.

6. Our discussion of *Reitze* is based upon two consolidated cases, announced in separate opinions. *Reitze v. Humphreys*, 53 Colo. 171, 125 P. 522 (1912); *Reitze v. Humphreys*, 53 Colo. 177, 125 P. 518 (1912).