Kimberly **GRABLER**, Plaintiff–Appellee,

v.

Lisa **ALLEN** and Board of Governors of the Colorado State University System, acting by and through Colorado State University, Defendants–Appellants.

No. 03CA1246.

Colorado Court of Appeals, Division II.

Feb. 10, 2005.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2004.

Lambdin & Chaney, L. Kathleen Chaney, Denver, Colorado, for Plaintiff–Appellee.

John W. Suthers, Attorney General, Kathleen L. Spalding, Assistant Attorney General, Denver, Colorado, for Defendants–Appellants.

ROTHENBERG, J.

Defendants, Lisa Allen and the Board of Governors of Colorado State University (CSU), appeal the trial court's order denying their motion to dismiss claims brought against them by plaintiff, Kimberly Grabler. The sole issue in this appeal is whether the trial court erred in ruling that defendants were not immune from liability under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2004. Because we conclude they are not immune, we affirm.

Defendant Lisa Allen was involved in automobile accident with plaintiff. At the time of the accident, Allen was a CSU student volunteer with the "Cam the Ram" program at CSU. Allen was driving a truck owned by a local car dealership. Attached to the truck was a trailer owned by CSU in which CSU's mascot, Cam the Ram, was transported to different locations. Allen was driving to the Colorado State Fair in Pueblo when she collided with the rear end of an automobile driven by plaintiff.

As pertinent here, plaintiff alleged injuries and filed this action against defendants, asserting claims for negligence and negligence per se. Defendants moved to dismiss plaintiff's complaint, contending they were immune from liability under the GIA. After limited discovery, the parties waived an evidentiary hearing and submitted the case on briefs to the trial court. It was undisputed that Allen was a "public employee" for purposes of the GIA, that she was driving the vehicle on behalf of CSU, that the trailer

containing the CSU mascot was owned by CSU and was attached to the truck, and that the truck was not owned or leased by CSU.

Plaintiff contended in the trial court—as she does here—that defendants' immunity was waived because Allen was operating a motor vehicle at the time of the accident for the purposes of the GIA. Plaintiff relies on § 24–10–106(1)(a), C.R.S.2004, of the GIA, which, as pertinent here, waives a public entity's immunity from tort actions "for injuries resulting from ... [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment."

Defendants deny that immunity was waived under the statute because the truck Allen was driving was owned by the local car dealership.

The trial court denied the motion to dismiss, concluding that at the time of the collision, Allen was operating a vehicle partially owned by CSU and that the truck and trailer were being operated as a unitary motor vehicle. Defendants filed this interlocutory appeal pursuant to §§ 24–10–108 and 24–10–118, C.R.S.2004.

### I.

Defendants contend the trial court erred in determining that immunity was waived. We disagree.

The GIA establishes sovereign immunity for all public entities and public employees for all actions that lie in tort or could lie in tort, except as specifically provided under the GIA. Section 24–10–106, C.R.S.2004.

Because the GIA's immunity derogates Colorado's common law, the legislative grants of immunity must be strictly construed, *see Bertrand v. Bd. of County Comm'rs*, 872 P.2d 223 (Colo.1994), but the GIA provisions that waive immunity are broadly construed. *See Walton v. State*, 968 P.2d 636 (Colo.1998).

Whether immunity has been waived under the GIA is an issue of subject matter jurisdiction. The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination

under the GIA will not be reversed unless clearly erroneous. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993). However, if, as here, the underlying facts are undisputed, the issue is one of law, and an appellate court is not bound by the trial court's determination. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997).

The term "motor vehicle" is not defined in the GIA. In *Bertrand v. Board of County Commissioners, supra*, the supreme court adopted a plain meaning definition of the term "motor vehicle" in the GIA, and determined that "a 'motor vehicle' includes any 'vehicle on wheels having its own motor and not running on rails or tracks, for use on streets or highways.'" *Bertrand v. Bd. of County Comm'rs, supra*, 872 P.2d at 229 (quoting *Webster's New World Dictionary of the American Language* 930 (2d College ed.1974)).

However, no Colorado appellate opinion has addressed whether a trailer that is attached to a motor vehicle constitutes a motor vehicle for purposes of the GIA. Indeed, we have located no cases in the country that have involved similar facts within the context of a claim of governmental immunity. Thus, we examine how Colorado and other courts have considered, in other contexts, whether an attached trailer constitutes part of the motor vehicle.

Generally, the analogous cases involve the construction of criminal statutes or arise in commercial settings involving tractor-trailer accidents in which one insurance carrier insures the owner of the tractor and another carrier insures the owner of the trailer. Because each insurer contends the other is liable, the commercial cases generally turn on the language in the policies. These rulings are not necessarily consistent. *See Truck Ins. Exch. v. Torres*, 193 Cal.App.2d 483, 14 Cal.Rptr. 408 (1961) (court held that for insurance purposes, a tractor and trailer, when hitched together and moving down a road, constituted a single vehicle); *Leamon v. State*, 17 Ohio App. 323 (1923) (a semi-trailer is a separate vehicle which is not driven or propelled by its own power, but which, to be useful, must be attached to and

become a part of mother vehicle, and then loses its identity as a separate vehicle). *But see Miller v. Berman,* 55 Cal.App.2d 569, 131 P.2d 18 (1942) (holding that owner of semi-trailer was not joint owner of any interest in the combined vehicle of truck and semi-trailer and, therefore, was not liable under California statute that imposed liability on the owner of the motor vehicle); *Hennessy v. Walker,* 279 N.Y. 94, 17 N.E.2d 782 (1938) (holding that although trailers and semi-trailers are vehicles within the meaning of the New York Vehicle and Traffic Law, they were not motor vehicles); *Prudential Ins. Co. v. Associated Employers Lloyds,* 250 S.W.2d 477, 480 (Tex.Civ.App.1952) ("[w]here a person lends a trailer or semi-trailer to an owner of a truck and while the same is being so operated on the public highway and connected with said truck, it has been held that the owner of the trailer is not responsible in damages to a third party, because the same is not considered a 'motor vehicle' ").

In *People v. Walters,* 39 Colo.App. 119, 568 P.2d 61 (1977), the defendants were charged with the theft of beer from the trailer of a semi-trailer truck owned by a distributor of alcoholic beverages. The evidence established that one of the defendants entered the cab of the truck while the driver was sleeping, took the trailer keys from the ignition, and then unlocked the trailer and removed a number of cases of beer from it.

The defendants sought reversal of their convictions for first degree criminal trespass on the basis that the evidence failed to show they had unlawfully entered "any motor vehicle with intent to steal anything of value." The defendants argued that the semi-trailer was not a "motor vehicle," which was defined for purposes of the criminal code as "any self-propelled device by which persons or property may be moved, carried, or transported from one place to another." *People v. Walters, supra,* 39 Colo.App. at 122, 568 P.2d at 64.

However, a division of this court concluded the subject vehicle, although composed of two separable parts, represented one commercial unit and was more comparable to an ordinary motor vehicle. The division further concluded that the General Assembly intend-

ed to include tractor-trailer units as "motor vehicles" for the purpose of criminal trespass. *People v. Walters, supra.*

Similarly, a California court held that when a trailer and tractor are joined for the purpose of both being moved simultaneously over the highway by the self-propulsion of the tractor portion, such a tractor-trailer comes within the meaning of a "motor vehicle" as used in the California Penal Code. *People v. Buttles,* 223 Cal.App.3d 1631, 273 Cal.Rptr. 397 (1990). *But see People v. Philpot,* 122 Cal.App.4th 893, 19 Cal.Rptr.3d 280 (2004) (holding that the theft of a truck with an attached trailer supported separate convictions for the unlawful taking of the truck and the unlawful taking or driving of the attached trailer, thus treating the truck and trailer as separate vehicles).

Other courts also have held that when a vehicle and trailer are hitched together they constituted a single vehicle. *See Dennler v. Dodge Transfer Corp.,* 201 F.Supp. 431, 438 (D.Conn.1962) ("[o]nce a trailer and tractor are attached and pulled over the highway by means of a motor, the trailer becomes an integral part of the unit and constitutes one motor vehicle"); *Hancock v. Pluth,* 113 Ill. App.2d 432, 251 N.E.2d 400 (1969) (concluding a hayrack that was coupled to the farm tractor for the purpose of being used as a single unit to transport people on a hayride constituted a motor vehicle for purposes of the Illinois Motor Vehicle Act).

Here, the trailer was being used in the manner that was intended because it was being towed by a motor vehicle. Although the trailer, by itself, might not constitute a motor vehicle under the supreme court's definition in *Bertrand, supra,* once the trailer was attached to the motor vehicle, it is reasonable to assume the trailer affected the operation and handling of the motor vehicle towing it. Additionally, when, as here, a motor vehicle and trailer are joined together and are traveling down a highway, the combined vehicle is perceived by others as one vehicle because the combined vehicle accelerates, turns, and slows down as one unit. *See Dennler v. Dodge Transfer Corp., supra.*

At oral argument, defendants suggested the outcome might be different if Allen had

backed into plaintiff's vehicle and the damage was caused by CSU's trailer, rather than the borrowed truck. Under this scenario, if Allen had been involved in a multiple car collision on the highway, defendants would be immune from liability in an action by the vehicle in front of the loaned truck, but not immune in an action by the vehicle behind CSU's trailer. We do not think the outcome should turn on whether Allen hit plaintiff's vehicle with the truck or the trailer.

We therefore conclude that, under these unusual circumstances in which CSU's trailer was attached to a borrowed truck, but was driven by CSU's agent for CSU's purposes and at CSU's request, the combination of the motor vehicle pulling the trailer constituted a "motor vehicle" for the limited purpose of the GIA. Accordingly, the trial court properly determined that defendants' immunity had been waived.

A contrary conclusion would create a situation where the public entity and employee would be immunized from liability for any damages resulting from a towed trailer. Such a result would be contrary to the General Assembly's intent to waive liability for the operation of a motor vehicle and to provide for compensation to persons injured by the negligent conduct of government employees. *State v. Moldovan,* 842 P.2d 220, 222 (Colo.1992) ("one of the basic but often overlooked purposes of the Governmental Immunity Act [is] to permit a person to seek redress for personal injuries caused by a public entity"); *see also Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215 (Colo. 2002) (a court should avoid interpretations that render language of a statute meaningless or absurd).

Given our conclusion, we need not address plaintiff's contention that Allen would not be immune from liability even if we found that CSU was immune. We also do not address the issues of negligence, causation, and damages, which will be determined on remand.

Order affirmed.

Judge NIETO and Judge LOEB concur.