TITAN INDEMNITY COMPANY, a Texas corporation, as subrogee of Sheron Walker, Corey Hodge, and Linda Armstrong, Plaintiff–Appellant,

v.

SCHOOL DISTRICT NO. 1 IN THE CITY AND COUNTY OF DENVER, d/b/a Denver Public Schools, Defendant–Appellee.

No. 04CA1401.

Colorado Court of Appeals,
Div. V.

Dec. 1, 2005.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, Kieth Van Doren, Englewood, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., Sonja S. McKenzie, Angela D. DeVine, Denver, Colorado, for Defendant–Appellee.

GRAHAM, J.

In this action for reimbursement of personal injury protection (PIP) benefits under the former Auto Accident Reparations Act, § 10–4–701, et seq. (repealed July 1, 2003) (No–Fault Act), plaintiff, Titan Indemnity Company, appeals from the trial court's order dismissing its complaint against defendant, Denver Public School District No. 1 (district). We reverse and remand.

A disabled district school bus, being pushed by a tow truck owned by the district and operated by a district employee, hit a passenger car insured by Titan, injuring the occupants. Titan paid PIP benefits to the occupants of the passenger car and then brought this subrogation action against the district. The district moved to ·dismiss the subrogation complaint, and the trial court granted the motion. This appeal followed.

I.

We review motions to dismiss de novo, accepting all matters of material fact in the complaint as true and viewing the allegations in the light most favorable to the plaintiff. *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256 (Colo.2000). A motion to dismiss is properly granted when the plaintiff's factual allegations cannot support a claim as a matter of law. *BRW, Inc. v. Dufficy & Sons,*

*Inc.,* 99 P.3d 66 (Colo.2004); *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995).

II.

Titan contends that the No–Fault Act allows subrogation claims against the owners of public school buses and that the trial court erred in concluding otherwise. We disagree.

■ Generally, PIP benefits are not recoverable by subrogation against a tortfeasor. *See* § 10–4–713(1) (repealed July 1, 2003); *Reg'l Transp. Dist. v. Aurora Pub. Schs.,* 45 P.3d 781 (Colo.App.2001). However, § 10–4–713(2)(a) (repealed July 1, 2003), under limited circumstances, allows the insurer of certain vehicles to file a subrogation claim against the operator of a nonprivate passenger vehicle for PIP benefits paid. *Reg'l Transp. Dist. v. Aurora Pub. Schs., supra.*

In 1991, § 10–4–713(2)(a) was amended to add the following emphasized language:

[W]here a motor vehicle accident involves a private passenger motor vehicle, *a public school vehicle designed to transport seven or more passengers,* and a nonprivate passenger motor vehicle, the insurer of the private passenger motor vehicle *or the insurer of the vehicle designed to transport seven or more passengers* shall have a direct cause of action for all benefits actually paid by such insurer under section 10–4–706(1)(b) to (1)(e) or alternatively, as applicable, section 10–4–706(2) or (3) against the owner, user, or operator of the nonprivate passenger motor vehicle or against any person or organization legally responsible for the acts or omissions of such owner, user, or operator.

Colo. Sess. Laws 1991, ch. 203, § 10–4–713(2)(a) at 1190; see also *Reg'l Transp. Dist. v. Aurora Pub. Schs., supra.*

■ Here, the trial court determined that a public school bus is not included in the definition of "nonprivate passenger motor vehicle." The court reasoned that a public school bus was set out by the legislature as a separate category of vehicle that is entitled to subrogate claims against owners of nonprivate passenger vehicles, and to include a

school bus in the nonprivate vehicle category would negate the purpose of this distinction. The court further held that "nonprivate passenger motor vehicle" refers to commercial vehicles, or "motor vehicles primarily designed to perform duties other than to transport private passengers."

Titan contends that, to the contrary, the plain language of the statute and the legislative intent demonstrate that a public school bus is a "nonprivate passenger motor vehicle." Titan also points out that, because in *Farmers Insurance Exchange v. Bill Boom Inc.*, 961 P.2d 465 (Colo.1998), the Colorado Supreme Court held that "nonprivate passenger motor vehicle" encompasses all motor vehicles not included within the statutory definition of "private passenger motor vehicle," a public school bus, which is not a "private passenger motor vehicle," necessarily is a "nonprivate passenger motor vehicle." *See* § 10–4–713(2)(c) (repealed July 1, 2003) ("[A] 'private passenger motor vehicle' means an automobile of the private passenger, station wagon, or camper type not used as a public livery conveyance ... or an automobile of the panel delivery or truck type with a rated load capacity of one thousand five hundred pounds or less."). Finally, Titan contends that, if the General Assembly wanted to bar subrogation claims against public school buses, it could have explicitly done so, just as it specifically gave public school buses the right to seek subrogation. We disagree.

Statutory interpretation and construction are questions of law. *Yacht Club II Homeowners Ass'n v. A.C. Excavating*, 94 P.3d 1177 (Colo.App.2003), *aff'd*, 114 P.3d 862 (Colo.2005). In construing a statute, we adopt that construction which best gives effect to the intent of the General Assembly. *Cherry Creek Gun Club, Inc. v. Huddleston*, 119 P.3d 592 (Colo.App.2005).

We ascertain legislative intent by first looking to the plain language of the statute. *In re Marriage of Dale*, 87 P.3d 219 (Colo. App.2003). Giving effect to every word, we do not adopt a construction that renders any term superfluous, and thus, we will not read into a statute an exception or proviso that the plain language does not suggest. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280 (Colo.

2000); *Moreland v. Alpert*, 124 P.3d 896 (Colo.App.2005).

We will apply the statute as written, unless doing so would lead to an absurd result. *See Showpiece Homes Corp. v. Assurance Co.*, 38 P.3d 47 (Colo.2001). If statutory provisions conflict, we will adopt the interpretation that best harmonizes the provisions. *See Berg v. Indus. Claim Appeals Office*, 2005 WL 1903825, 128 P.3d 270 (Colo.App. No. 04CA1130, Aug. 11, 2005).

Section 10–4–713(2)(a), as originally enacted, clearly limited PIP subrogation rights to a few exceptional circumstances. Although the General Assembly in 1991 added another category—owners and insurers of public school buses—to that exclusive list of owners and insurers entitled to PIP subrogation rights against commercial vehicles, *see Reg'l Transp. Dist. v. Aurora Pub. Schs., supra*, the General Assembly did not similarly amend the statute to allow subrogation claims against owners and insurers of public school buses. "The inclusion of certain items implies the exclusion of others." *Eichhorn v. Kelley*, 56 P.3d 124, 126 (Colo.App.2002); *see also Beeghly v. Mack*, 20 P.3d 610 (Colo. 2001) (where the legislature specifically included a default provision in one statute, but did not include such a provision in another, the default provision could not be read into the latter statute). Based on this rule of interpretation, we conclude that the General Assembly did not intend that subrogation claims could be brought against owners and insurers of public school buses.

We also agree with the trial court that, for purposes of former § 10–4–713(2)(a), the General Assembly created a third category of motor vehicles, separate from "private passenger motor vehicles" and "nonprivate passenger motor vehicles." To include public school buses under the definition of "nonprivate passenger motor vehicle" would render that third category, "a public school vehicle designed to transport seven or more passengers," superfluous.

Finally, although the court in *Bill Boom* concluded that the term "nonprivate passenger motor vehicle" includes all motor vehicles not included within the definition of "private

passenger motor vehicle," it did so without discussing the legislature's addition of the public school vehicle language in 1991. Because the facts in *Bill Boom* did not involve a public school bus, no analysis of the 1991 amendment or the legislature's intent in enacting it was required or undertaken in that case.

We therefore conclude that the trial court was correct in holding that a public school bus is not included in the definition of "nonprivate passenger motor vehicle."

### III.

█ Titan next contends that, even if there is no right to subrogation against owners of public school buses, the allegations of the complaint were sufficient to state a claim for subrogation against the district because the operator of the tow truck, which is unquestionably a "nonprivate passenger motor vehicle," was negligent. Specifically, Titan argues that the trial court erred in concluding that the tow truck was an extension of the school bus and therefore insulated from subrogation claims. We agree.

█ We first reject the district's argument that this issue was not properly raised in the trial court. Titan raised this issue in its sur-reply to the district's motion to dismiss, and the trial court addressed, and rejected, Titan's argument in its order dismissing the complaint. Thus, we deem the issue sufficiently raised and ruled on in the trial court to support the appeal. Furthermore, we perceive no prejudice to the district by Titan's submission of a sur-reply brief because the trial court ruled in the district's favor on this issue, and the district has had the opportunity on appeal to make the arguments it claims to have been precluded from making in the trial court. Thus, we will address the merits of the argument.

The issue here is whether Titan set forth a valid claim for subrogation against the district. Because we concluded that Titan could not bring a subrogation claim against the district for any negligence of the bus driver, Titan must demonstrate that it may bring a subrogation claim against the district for the negligence of the driver of the tow truck,

which was pushing the school bus when the accident occurred.

No Colorado appellate opinion has addressed whether the No–Fault Act allows subrogation claims against an owner of a nonprivate passenger vehicle that is pushing a disabled vehicle when an accident occurs. However, in *Dairyland Insurance Co. v. Drum,* 193 Colo. 519, 568 P.2d 459 (1977), *disapproved of on grounds of causation by Kohl v. Union Insurance Co.,* 731 P.2d 134 (Colo.1986), the Colorado Supreme Court held that a vehicle towing another vehicle may be liable for the negligence of both vehicles:

> Accidents arising from towing situations are neither rare nor unforeseeable. It is obvious that Drum's actions in towing the Miller vehicle carried the potential of creating an unreasonable risk of injury. That potential arose as much from Drum's use of Miller's vehicle as from the use of his own. We, therefore, hold that both vehicles were being used by both Miller and Drum.

*Dairyland Ins. Co. v. Drum, supra,* 193 Colo. at 522–23, 568 P.2d at 462.

█ Other jurisdictions have addressed whether negligence claims may be brought against an owner of a motor vehicle pushing another vehicle. These cases outline certain considerations that are relevant to our analysis here. Pushing a disabled or stalled motor vehicle along a highway. or street requires the exercise of care that an ordinarily prudent person would use under existing conditions or circumstances, or commensurate with known or foreseeable dangers incident to the operation. *See Duffy v. Harden,* 179 N.W.2d 496 (Iowa 1970); *Miller v. Query,* 201 Va. 193, 110 S.E.2d 198 (1959). Operating a motor vehicle that is pushing another requires a high degree of skill; power must be exercised carefully, brakes must be used quickly and accurately, steering is more difficult than usual, and the operator of the pushing vehicle is under a duty to know and give the signals required of the operator of a motor vehicle. *Miller v. Query, supra.*

In several jurisdictions, owners or operators of motor vehicles pushing other vehicles

have been held, or properly found, negligent in connection with the pushing operation. *See, e.g., Cadwell v. Watson*, 134 Conn. 640, 60 A.2d 168 (1948); *Rees v. Spillane*, 341 Ill.App. 647, 94 N.E.2d 686 (1950); *Duffy v. Harden, supra; Kohler v. Sheffert*, 250 Iowa 899, 96 N.W.2d 911 (Iowa 1959); *Gieser v. Hambek*, 188 N.W.2d 401 (N.D.1971).

Accordingly, the tow truck driver, in pushing the school bus, had the duty to exercise ordinary care, which is the care an ordinarily prudent person would exercise under the existing circumstances. Whether he has exercised due care in the particular case is generally a question for the jury. *See Graven v. Vail Assocs., Inc. .*, 909 P.2d 514 (Colo.1995).

Here, the trial court simply dismissed the notion that Titan could bring a claim for subrogation against the district for negligence on the part of the tow truck driver. Instead, the trial court summarily concluded that the tow truck was an extension of the school bus, and therefore, Titan could not seek subrogation against the district even if the tow truck driver was negligent.

To the extent that the trial court's conclusion is a finding of fact, such a finding could not be made in the context of determining a C.R.C.P. 12(b)(5) motion. *See Medina v. State,* 35 P.3d 443 (Colo.2001) (chief difference between motions under C.R.C.P. 12(b)(1) and those under C.R.C.P. 12(b)(5) is that in the latter, the trial court is not permitted to make findings of fact but must take allegations of the complaint as true).

Even assuming that the trial court's conclusion was one of law, we discern no basis in fact or in law for concluding that the tow truck was an extension of the school bus. Taking the allegations of the complaint in the light most favorable to Titan, conversely the school bus could be an extension of the tow truck, which the parties do not seem to dispute is a "nonprivate passenger motor vehicle" subject to subrogation claims. We perceive no practical differences between pushing the school bus and towing the school bus and no legal justification for concluding that if the school bus were being pushed, the motive force pushing would be insulated from suit, whereas if the motive force were pulling the bus, it would not be insulated

from suit. Thus, regardless of whether the school bus is an extension of the tow truck (a nonprivate or commercial vehicle), Titan should be able to subrogate against the district and recover if it is shown that the tow truck driver was negligent in pushing the school bus. Thus, the complaint states a possible claim for relief.

Recently, in *Grabler v. Allen*, 109 P.3d 1047 (Colo.App.2005), a division of this court concluded that a motor vehicle pulling a trailer constituted a "motor vehicle" for the limited purpose of the Colorado Governmental Immunity Act (GIA). The division noted that "when, as here, a motor vehicle and trailer are joined together and are traveling down a highway, the combined vehicle is perceived by others as one vehicle because the combined vehicle accelerates, turns, and slows down as one unit." *Grabler v. Allen, supra,* 109 P.3d at 1050. Thus, the division in *Grabler* determined that an attached trailer became a motor vehicle for purposes of the GIA. Here, in contrast to the facts in *Grabler,* there is nothing in the record to support the notion that the two vehicles turned as a unit and became one single motor vehicle. On the contrary, some evidence in the record seems to suggest that at the time of the collision, the tow truck and bus were separated by some distance. In any case, each vehicle was operated by a driver at the time of the collision.

We conclude that Titan's complaint sufficiently states a claim upon which relief could be granted against the district on the basis of the operation of the tow truck and that the trial court erred in ruling to the contrary. *See Halverson v. Pikes Peak Family Counseling & Mental Health Ctr., Inc.,* 795 P.2d 1352 (Colo.App.1990).

The order is reversed, and the case is remanded to the trial court for reinstatement of the complaint and for further proceedings consistent with this opinion.

Judge VOGT and Judge ROMÁN concur.