25CA0147 Funeral Directors v ICAO 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0147
Industrial Claim Appeals Office of the State of Colorado
DD No. 27990-2024

---

Funeral Directors Services LLC,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Jenna LaLonde,

Respondents.

---

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BERGER*
Kuhn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Fisher & Phillips LLP, Kristin R.B. White, Jane Waterman-Joyce, Denver, Colorado, for Petitioner

No Appearance for Respondents

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this unemployment compensation benefits case, the Industrial Claim Appeals Office (the Panel) affirmed a hearing officer's order that Funeral Directors Services LLC (FDS) did not show good cause for failing to timely respond to a request for information regarding a former employee's benefits claim. As a result of the Panel's affirmance, FDS forfeited the right to challenge the award of unemployment benefits. FDS appeals the Panel's order. We set it aside and remand for further proceedings on the merits of FDS's challenge to the award of benefits.

## I.    Relevant Facts

¶ 2 Nick Hodgdon is the owner of FDS and several other companies, including First Call of Colorado (First Call) and Autopsy Center of Colorado (Autopsy Center). (For convenience, we refer to these three companies collectively as "employer.")

¶ 3 Claimant Jenna LaLonde served in a management role for all three companies, with duties including "dispatch, HR, fleet manager, and payroll."

¶ 4 LaLonde sent Hodgdon a text on July 25, 2024, informing him that she was "resigning from all positions within all of [his] companies." Her last day of work was August 11. She then applied

1

for unemployment benefits. The Division of Unemployment Insurance (Division) mailed form questionnaires to employer asking for information about LaLonde's job separation.

¶ 5 The record shows that First Call and Autopsy Center received these questionnaires and timely responded, indicating that LaLonde had resigned her employment voluntarily. Those responses, which were faxed to the Division on August 26, indicated that LaLonde had also been employed by FDS.

¶ 6 On September 19, 2024, a deputy for the Division notified FDS that it had lost its right to protest the award of unemployment benefits to LaLonde under section 8-74-102, C.R.S. 2024. That section provides that an employer has seven days to present any information pertinent to the claim before it loses its right to protest. *Id. See also* Department of Labor and Employment Regulation 7.2.8, 7 Code Colo. Regs. 1101-2 (deeming a nonresponding employer not an "interested party"). FDS appealed the determination and requested a hearing.

¶ 7 In November 2024, a hearing was held to determine whether FDS's failure to respond should be excused for good cause under

Department of Labor and Employment Regulation 12.1.8, 7 Code Colo. Regs. 1101-2 (Regulation 12.1.8).

¶ 8    Hodgdon, appearing on behalf of FDS and represented by counsel, testified that LaLonde was the person responsible for "performing all of unemployment" and that she was in charge of handling, setting up, and processing unemployment insurance accounts for FDS.

¶ 9    Hodgdon testified that he received the questionnaires for First Call and Autopsy Center "pretty much the day of, or the day before they were due, and we responded immediately." He explained that his companies had moved from a physical location on Acoma Street to one on Kalamath Street. Although the questionnaires he received were mailed to the Acoma Street address, they were forwarded to the Kalamath Street address in time to respond by the due date of August 26. He testified that he did not receive any questionnaire for FDS, and that he only became aware there was an issue concerning FDS when he received the September 19 notice of determination.

¶ 10    According to Hodgdon, LaLonde was responsible for setting up and maintaining the electronic accounts concerning unemployment

benefits for his companies. This included setting up a payroll company to have access, which he was unaware of until after she resigned. He also testified that his new manager had been unable to get into FDS's electronic unemployment account. He further testified that LaLonde denied him access to her email after resigning, and hid business vehicles, necessitating the filing of a police report concerning stolen property. He asserted that FDS did not fail to respond because FDS never received any notification that "there was anything to respond to." None of Hodgdon's testimony was controverted either by other witness testimony or documentary evidence.

¶ 11 The hearing officer ruled FDS failed to show good cause for its failure to respond, listing the factors that the Division considers when determining good cause under Regulation 12.1.8. The six factors are:

> 1. Whether the party acted in the manner that a reasonably prudent individual would have acted under the same or similar circumstances;

> 2. Whether there was administrative error by the [D]ivision;

4

3. Whether the party exercised control over the untimely action, except that the acts and omissions of a party's authorized representative are considered the acts and omissions of the party and are not considered to be a factor outside the party's control as intended by this rule;

4. The length of time the action was untimely;

5. Whether any other interested party has been prejudiced by the failure to act or untimely action[.] "Prejudiced," as used in this section, means that an interested party will be prevented from presenting [or] substantially hindered from presenting probative evidence in support of the interested party's position or in the ability to refute the position of the opposing party; and

6. Whether denying good cause would lead to a result that is inconsistent with the law.

¶ 12     The regulation also provides that "[g]ood cause cannot be established to accept or permit an untimely action or to excuse the failure to act, as required, that was caused by the party's failure to keep the division directly and promptly informed by a written, signed statement of his or her current and correct mailing address in person, by mail, by facsimile machine, or by other division-approved electronic means." Regulation 12.1.8.7. But that "provision shall not apply if the party establishes that he or she

reasonably believed that the division would not have any need for his or her new address under the circumstances." *Id.*

¶ 13 The regulation provides that "[a] written decision concerning the existence of good cause need not contain findings of fact on every relevant factor, but the basis for the decision must be apparent from the order." Regulation 12.1.8.8.

¶ 14 The hearing officer determined that FDS's questionnaire was emailed to "the email address in the employer's unemployment insurance account," which was an address for a payroll company. The hearing officer found that FDS "was not diligent when it failed to follow up with the Division and update their contact information if needed after [LaLonde] left her employment." The hearing officer further concluded that this failure should be counted towards determining whether "the employer has engaged in a pattern of failing to respond adequately or timely" under section 8-79-102(5)(a), C.R.S. 2024.

¶ 15 FDS appealed the hearing officer's determination to the Panel, which affirmed. The Panel concluded that (1) FDS was aware that LaLonde's job duties included maintaining accurate contact information with the Division and (2) a "reasonably prudent

6

employer would not have failed to update the employer's contact information with [the Colorado Department of Labor and Employment (CDLE)] following the separation of the employee responsible for that task."

## II.   Discussion

¶ 16     FDS contends that the Panel erred by relying on the hearing officer's determination that FDS did not establish good cause.  FDS also argues that the Panel erred by finding that a reasonably prudent employer would have updated its account after LaLonde's separation from employment.

### A.   Standard of Review

¶ 17     We review de novo the Panel's legal conclusions.  *See Cath. Health Initiatives Colo. v. Indus. Claim Appeals Off.*, 2021 COA 48, ¶ 14.  As relevant here, we may set aside the Panel's decision if the findings of fact do not support the decision or the decision is erroneous as a matter of law.  *See* § 8-74-107(6)(c)-(d), C.R.S. 2024.

### B.   Analysis

¶ 18     Upon receipt of a claim for unemployment, the Division must notify other interested parties of the claim by mail or electronic means.  § 8-74-102(1).  An interested party must be afforded at

7

least seven calendar days after the date of the notice to present information pertinent to the claim. *Id.* An interested party may present information out of time only if it shows good cause. *Id.*

¶ 19 Hodgdon was the only witness at the hearing. He testified that he never received a questionnaire for FDS by regular mail, but he did receive the questionnaires for First Call and Autopsy Center via regular mail. The latter forms, completed and faxed to the Division on August 26, indicated that LaLonde was also employed by FDS. He also provided the email where he could be contacted, which was different than the email for the payroll company that LaLonde set up. Importantly, he testified that he did not think he needed to update the unemployment accounts for his companies with the Division because he (1) timely responded to the questionnaires he received and (2) indicated that LaLonde resigned voluntarily.

¶ 20 After hearing that testimony and reviewing the record, the hearing officer based the good cause determination on a finding that the FDS questionnaire was emailed to the payroll company. The hearing officer recognized that LaLonde had set up that email, and that the payroll company, if it received the questionnaire for FDS, did not forward it to Hodgdon. The hearing officer then listed

all the good cause factors under Regulation 12.1.8, but did not discuss any of them, and apparently based the decision on 12.1.8.7 (whether a failure to act is caused by a party's failure to keep the division informed of current contact information). The hearing officer determined that the FDS questionnaire was "emailed to an email address belonging to the employer." Then, the hearing officer concluded that the payroll company should have forwarded it to FDS. And because the payroll company was an "authorized representative" of FDS, its actions and omissions were imputed to FDS.

¶ 21    The Panel affirmed the hearing officer's decision. It observed, in a footnote, that the fact that LaLonde resigned was not dispositive, because she still could have established some qualifying circumstance that entitled her to unemployment. Citing *Esparza v. Industrial Commission*, 702 P.2d 288, 290 (Colo. App. 1985), the Panel recognized that whether good cause is established requires a balancing of relevant factors and consideration of the totality of the circumstances. The Panel stated that "there are factors that weigh in favor of finding good cause, and factors that weigh in favor of not

finding good cause." But the Panel ultimately determined that the hearing officer's good cause determination was not erroneous.

¶ 22    On appeal, FDS specifically objects to the finding that "a reasonably prudent employer would not have failed to update the employer's contact information with CDLE following the separation of the employee responsible for this task." FDS argues that this burden was neither in the applicable statute nor reasonable. Under the specific circumstances of this case, we agree.

¶ 23    We recognize that, under Regulation 12.1.8, a hearing officer is not required to make findings of fact on every relevant good cause factor. *See* Regulation 12.1.8.8. Nevertheless, the basis for the decision must be apparent from the order. *Id.* Here, we agree with FDS that the hearing officer failed to consider what a reasonably prudent person would have done under the totality of the circumstances, as required by *Esparza*, 702 P.2d at 290.

¶ 24    The record, viewed in its entirety, supports FDS's argument that, as of August 26, it had no reason to think it needed to update its contact information with the Division. By that time, employer's other two entities had received the questionnaires from the Division, timely completed them, indicated that LaLonde was also

an employee of FDS, and updated the employer's contact information.  The hearing officer completely disregarded these circumstances and relied only on the fact that the FDS questionnaire was apparently emailed to a payroll company that LaLonde set up.  We also disagree on this record that the actions of the payroll company can automatically be attributed to FDS, especially since Hodgdon testified that LaLonde set up that access and then locked electronic accounts upon her departure.

¶ 25    Generally the application of the good cause factors is at the Panel's discretion, *see Nguyen v. Indus. Claim Appeals Off.*, 174 P.3d 847, 848-49 (Colo. App. 2007).  But especially when, as here, the relevant facts are undisputed, we review de novo the Panel's ultimate legal conclusion.  *See Harbert v. Indus. Claim Appeals Off.*, 2012 COA 23, ¶ 9.  Moreover, while procedural rules are important and must be complied with, the law favors decisions on the merits of a dispute, not on alleged procedural defects.  *See Beeghly v. Mack*, 20 P.3d 610, 614 (Colo. 2001).

¶ 26    We conclude that the hearing officer's order (and the Panel's affirmance of that order) is not supported by the record.  We conclude, based on the undisputed evidence before the hearing

officer, that FDS established good cause and that FDS must have its protest rights reinstated.

¶ 27    Ordinarily when we find legal error by a hearing officer or the Panel, we remand for reconsideration under the correct view of the law. *See, e.g., Sheridan Redev. Agency v. Knightsbridge Land Co., L.L.C.,* 166 P.3d 259, 266 (Colo. App. 2007).  We decline to further prolong this litigation because, in our view, the only legally and factually supported result is a finding of good cause.

### III.    Disposition

¶ 28    The Panel's order is set aside, and the case is remanded for further proceedings on the merits of FDS's challenge to an award of unemployment benefits.

JUDGE KUHN and JUDGE MOULTRIE concur.